*482
 
 RANDALL, Circuit Judge:
 

 This case presents a bankruptcy court’s refusal to confirm a “wage earner plan,” under Chapter 13 of the Bankruptcy Code, which called for the making of the current regular payments on the debtors’ homestead mortgage (current mortgage payments) “outside the plan” while the arrear-age on the mortgage claim was to be cured pursuant to the provisions of § 1322(b)(5) of the Bankruptcy Code. The bankruptcy court denied confirmation on the basis of its belief that Chapter 13 policy requires that all payments be made within the plan. For the reasons set forth below, we vacate the judgment of the bankruptcy court and remand this case to the bankruptcy court for reconsideration of confirmation after clarification of the plan by the debtors.
 
 [1]
 

 I. Statement of Facts.
 

 On November 26, 1980, John W. Foster, Jr. and Myrtha D. Foster filed a petition and plan in bankruptcy pursuant to Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 1301-1330 (Supp. IV 1980) (Chapter 13).
 
 [2]
 
 According to the plan, the Fosters would pay to the bankruptcy trustee $350 per month for thirty-six months, which payments were to be used to pay 100% of the priority claim of the Internal Revenue Service, the full value of the collateral of all secured creditors whose claims were timely filed and duly proven and allowed (with the exception of the mortgage claims
 
 [3]
 
 separately provided for), and 49% on the claims of the unsecured creditors whose claims were duly proven and allowed. The plan stated, as to the first and second lien holders on the Fosters’ home, that these creditors would be paid “the arrearage only under the plan,” and that “[t]he current payments will be outside the plan according to the terms of the notes and deed of Trust.”
 

 A creditors’ meeting was held on February 11, 1981, at which the Fosters appeared and submitted to examination. Also in attendance were the bankruptcy trustee, appointed by the bankruptcy court, and the Fosters’ attorney. The trustee recommended that a confirmation hearing be held and that the Chapter 13 plan proposed by the Fosters be confirmed.
 

 At the confirmation hearing, held on February 26, 1981, the bankruptcy court noted that the Fosters’ plan “met all requirements for confirmation and was recommended for confirmation by the trustee.” Nevertheless, observing that the plan “proposed to make post-confirmation payments on residential mortgages outside the plan[,]” the bankruptcy court ruled from the bench that confirmation would be denied because of the payments outside the plan. On March 17, 1981, the bankruptcy court issued a written opinion detailing the reasons for denying confirmation of the Fosters’ plan. In that opinion, the court concluded that “[o]n balance, Chapter 13 policy requires that all payments be made within the plan.” The Fosters appeal the bankruptcy court’s ruling, contending that the bankruptcy court’s conclusion that all payments must be made within the plan is erroneous and that the denial of confirmation was therefore an abuse of discretion.'
 

 II. Chapter 13 of the Bankruptcy Code.
 

 Chapter 13 of the Bankruptcy Code, entitled “Adjustment of Debts of an Individual With Regular Income,” provides overextended debtors
 
 [4]
 
 an alternative to ordi
 
 *483
 
 nary or straight bankruptcy (liquidating bankruptcy).
 
 [5]
 
 Debtors may obtain a discharge of their debts through the employment of a plan (sometimes referred to as a “wage earner plan”) for the payment of their debts over an extended period of time (generally not to exceed three years)
 
 [6]
 
 out of the debtor’s future income, “the very barter pledged by the debtor to obtain credit.” 5
 
 Collier on Bankruptcy
 
 § 1300.01 at 1300-16 (15th ed. 1981)
 
 (Collier).
 
 The use of Chapter 13 has advantages over liquidating bankruptcy for both debtor and creditor.
 

 Creditor interests are promoted through ratable recoveries from future income not available to creditors in liquidating bankruptcy proceedings. Chapter 13 maximizes debtor relief by preserving to the debtor existing assets, as well as employment or going-concern value, pending completion of a repayment plan under the supervision of the chapter 13 trustee.
 

 Collier, supra,
 
 § 1300.02 at 1300-20.
 

 A Chapter 13 case is commenced by the filing of a Chapter 13 petition. 11 U.S.C. § 301. Only the debtor may commence a Chapter 13 proceeding; there is no provision for an “involuntary” Chapter 13.
 
 [7]
 
 The commencement'of the case creates an estate which includes, among other things, “all legal or equitable interests of the debt- or in property as of the commencement of the case,” 11 U.S.C. § 541, and property and earnings acquired after commencement of the case but before the case is closed, dismissed or converted, 11 U.S.C. § 1306(a), with the debtor remaining in possession of the property of the estate, except as provided in the confirmed plan or the order confirming the plan, 11 U.S.C. § 1306(b). The confirmation of a plan vests all of the property of the estate in the debtor. 11 U.S.C. § 1327(b). From the time of the filing of the Chapter 13 petition, the “automatic stay” provisions of § 362 restrict the actions of creditors against the property of the estate or of the debtor, “prohibiting most acts and the commencement or continuation of most civil actions to collect a consumer debt.”
 
 Collier, supra,
 
 § 1300-45 at 1300-101. Again, a major concern is the protection of both debtor and creditor. Besides being a fundamental debtor protection, the stay provisions prevent some creditors from obtaining payment in preference to and to the detriment of other creditors.
 
 Collier, supra,
 
 § 1300.45 at 1300-99. The automatic stay provisions remain in effect as concerns most acts until the case is closed or dismissed or a Chapter 13 discharge is granted or denied. 11 U.S.C. § 362(c).
 

 In addition to filing a petition, the debtor files a plan providing for the repayment of all or a portion of the claims against the debtor out of the debtor’s future income (or out of the estate).
 
 [8]
 
 There
 
 *484
 
 are only three mandatory provisions of a Chapter 13 plan:
 

 The plan shall—
 

 (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
 

 (2) provide for the full payment, in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and
 

 (3) if the plan classifies claims, provide the same treatment for each claim within a particular class.
 

 11 U.S.C. § 1322(a). Section 1322(b) sets out some additional discretionary provisions which may be included in a Chapter 13 plan.
 
 [9]
 
 Of particular significance in this case are §§ 1322(b)(2) and 1322(b)(5). Section 1322(b)(2) provides that “the plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor’s principal residence, or of holders of unsecured claims.” Section 1322(b)(5) provides that “the plan may, notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.”
 

 In return for compliance with the plan, a debtor is entitled to a discharge of “all debts provided for by the plan or disallowed under section 502 of this title,
 
 except any debt
 
 ' — (1)
 
 provided for under section 1322(b)(5) of this
 
 title; or (2) of the kind specified in section 523(a)(5) of this title.” 11 U.S.C. § 1328 (emphasis added).
 

 Confirmation of Chapter 13 plans is governed by § 1325(a). That section states that the court shall confirm a plan if six requirements are met:
 

 (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
 

 (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
 

 (3) the plan has been proposed in good faith and not by any means forbidden by law;
 

 
 *485
 
 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
 

 (5) with respect to each allowed secured claim provided for by the plan—
 

 (A) the holder of such claim has accepted the plan;
 

 (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
 

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 

 (C) the debtor surrenders the property securing such claim to such holder; and
 

 (6) the debtor will be able to make all payments under the plan and to comply with the plan.
 

 III. Inside, Outside, Upside-Down.
 

 [10]
 

 A major source of confusion in this case is the ambiguous use of the term “outside the plan.” The Fosters stated in their proposed plan that “[t]he current payments [on their mortgage claim] will be
 
 outside the plan
 
 according to the terms of the notes and deed of Trust.” (emphasis added). While the Fosters have argued on appeal that they meant only that these payments would be made by the debtors directly to the creditors, rather than through the standing trustee, it is clear that the bankruptcy court did not give the plan provision the same reading. The bankruptcy court held the making of the current mortgage payments outside the plan to be unlawful, despite expressly recognizing that a plan can leave to the debtor the responsibility as disbursing agent of physically paying the creditors.
 

 The question whether claims were dealt with by the plan or were treated outside the plan wás significant under the Bankruptcy Act of 1898, precursor of the present Bankruptcy Code, because the Act required that secured creditors whose claims were dealt with by a plan approve the plan. As explained in
 
 In re Blevins,
 
 1 B.R. 442, 443 (Bkrtcy.S.D.Ohio 1979), cited by the bankruptcy court:
 

 [Bjecause of the provision in § 652 of Chapter XIII that ‘secured creditors whose claims are dealt with by the plan’ had to accept such a plan, the practice developed in Chapter XIII that certain secured creditors were not dealt with by the terms of the plan, but rather were to be treated ‘outside’ the provisions of the plan. This practice was intended to avoid the problem of a rejecting secured creditor being dealt with by the plan, and thus creating, in the view of some courts, a bar to confirmation.
 
 [11]
 

 Although one bankruptcy court appears to have recently used the term as it is used by the Fosters — to refer to payments disbursed by the debtors
 
 [12]
 
 — it seems clear that the bankruptcy court was reading the term in the sense described in the
 
 Blevins
 
 case. This is clear from the related argument as to whether the payments, designated as “outside the plan,” are subject to the standing trustee’s percentage fee which is collected from all payments “under plans.” The Fosters, having argued on the one hand that they intended the payments to be made by the Fosters under the plan, have also argued that those payments should not be subject to the trustee’s fees. In this opinion, we will address both interpretations of the phrase “outside the plan” — the
 
 *486
 
 interpretation currently advanced by the Fosters to the effect that the phrase simply provided for the debtors to act as disbursing agent for the current mortgage payments and the interpretation adopted by the bankruptcy court to the effect that the phrase was intended to cause the current mortgage payments to be considered as “not dealt with by the terms of the plan.”
 

 IV. The Debtors as Disbursing Agent.
 

 As we have noted, the Fosters have taken the position on appeal that the provision in their plan that the current mortgage payments would be made “outside the plan” merely meant that the payments would be made by the Fosters directly to the creditors rather than through the standing trustee. They argue that because such designation of the debtors as disbursing agents is permissible under Chapter 13, the court erred in denying confirmation of their plan. Although we do not agree that the designation of the debtors as disbursing agent was the basis of the bankruptcy court’s denial of confirmation, we do agree that Chapter 13 permits a debtor to act as disbursing agent, subject to the bankruptcy court’s “feasibility” determination under 11 U.S.C. § 1325(a)(6).
 

 Section 1326(b) provides: “Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make all payments to creditors under the plan.” We agree with those courts which have concluded that Congress left open in § 1326(b) the possibility of direct disbursements “under the plan” by the Chapter 13 debtor.
 
 In re Case,
 
 11 B.R. 843, 846 (Bkrtcy.D.Utah 1981);
 
 In re Hines,
 
 7 B.R. 415, 420 (Bkrtcy.D.S.D.1980);
 
 In re Centineo,
 
 4 B.R. 654 (Bkrtcy.D.Neb.1980);
 
 In re Wittenmeier,
 
 4 B.R. 86, 88 (Bkrtcy.M.D.Tenn.1980). Nonetheless, § 1326(b) also “makes it clear that the Chapter 13 trustee is normally to make distributions to creditors of the payments made under the plan by the debtor.” S.Rep. No. 989, 95th Cong., 1st Sess. 142 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5928.
 

 One of the primary concerns of Congress in the 1978 revisions of Chapter 13 was the enhancement of the “flexibility” of debtors in the formulation of Chapter 13 plans. “Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor. Section 1322 emphasizes that purpose by fixing a minimum of mandatory plan provisions.” S.Rep. No. 989, 95th Cong., 1st Sess. 141 (1978), U.S.Code Cong. & Admin.News 1978, p. 5927. Although we believe that the intent of Congress to enhance the flexibility of debtors in formulating plans under Chapter 13 should be given strong consideration by a bankruptcy court in deciding whether to allow the debtor to serve as disbursing agent for the current mortgage payments, we also believe that the provisions of Chapter 13 make it clear that the designation of the debtor as such a disbursing agent is very much a matter left to the considered discretion of the bankruptcy court. Several courts have held that § 1325(a) makes confirmation of a Chapter 13 plan mandatory where all six conditions of that provision are satisfied.
 
 See, e.g., In re Polak,
 
 9 B.R. 502, 506 (D.C.W.D.Mich.1981);
 
 In re Scott,
 
 7 B.R. 692, 694 (Bkrtcy.E.D.Penn.1980);
 
 In re Bonder,
 
 3 B.R. 623, 626 (Bkrtcy.E.D.N.Y.1980);
 
 In re Keckler,
 
 3 B.R. 155, 157 (Bkrtcy.N.D.Ohio 1980). Section 1325(aX6), however, requires that the debtor “be able to make all payments under the plan and to comply with the plan.”
 
 [13]
 
 Where a plan designates the debtor as disbursing agent with respect to current mortgage payments to be made under the plan, then, the bankruptcy court, in deciding whether to confirm the plan, must determine whether the debtor will be able to make those payments and to comply with the plan.
 

 There are factors militating in favor of the debtor acting as disbursing agent for the current mortgage payments and factors militating against the debtor so acting. The court in
 
 Case
 
 expressed the following
 
 *487
 
 rationale for preferring disbursement through the trustee:
 

 It is primarily the trustee’s duty to insure that payments are made under the plan and to supervise execution of the plan. Therefore, a creditor should have the right to insure protection of its interests under the plan by refusing to deal further directly with the debtor with whom it may have experienced problems in the past. Rather, the creditor should be entitled to have the trustee more effectively exercise her supervisory duty by taking the responsibility of collecting and disbursing the payments to the creditor, leaving to the trustee the hassle of insuring the payments are being made and of bringing to the attention of the Court when the payments are in arrears and the plan is not being carried out as confirmed. Similarly, if the trustee feels that she can more effectively fulfill her supervisory duty over the execution of the plan by having all payments made through her, in the absence of some convincing reason either business or otherwise to the contrary, she ought to be entitled to require payments to be made directly to her.
 

 Case, supra,
 
 at 846. In
 
 Hines,
 
 though, another bankruptcy court concluded that there are “valid reasons for a debtor to continue making payments directly to creditors holding mortgages on a debtor’s homestead property.”
 
 Hines, supra,
 
 at 421. That court observed:
 

 Long after the Chapter 13 Plan has expired a debtor is usually still making payments on the mortgage. The code contemplates that such an event will occur. It would be ridiculous to have debtors subject the mortgage payments to the trustee for the term of the plan and then have to go through the process of picking the payments up again.
 

 Further, a creditor holding a mortgage is usually quite capable of looking after its own interests. It is the experience of this Court that if a debtor defaults on a mortgage, the creditor is usually ready and capable of taking care of himself.
 

 Id.
 

 [14]
 

 If the bankruptcy court concludes that the debtor’s acting as disbursing agent with respect to the current mortgage payments will not impair the debtor’s ability to make all payments under, and to comply with, the plan, then the court is obligated to confirm the plan, assuming it complies in all other respects with § 1325(a). Although we do not consider it appropriate here to attempt to list all of the factors which a bankruptcy court may consider in deciding whether to confirm a plan which calls for a debtor to act as disbursing agent as to the current mortgage payments, we think that, in addition to the considerations noted above, the degree of responsibility of the debtor, as evidenced by his past dealings with his creditors, and the reasons contributing to the debtor’s need for a Chapter 13 plan may be significant.
 
 See, e.g., Wittenmeier, supra,
 
 at 88 (“Problem with mortgage payments did not cause the debtor to seek relief under Chapter 13.”).
 
 See a iso In the Matter of Berry,
 
 5 B.R. 515 (Bkrtcy.S.D.Ohio 1980). Additionally, we note that in confirming a plan which designates the debtor as disbursing agent with respect to payment of the current mortgage payments, the order of confirmation may include the qualification that the debtor is so designated as disbursing agent subject to further order of the court. The continuation of the debtor as disbursing agent may then be altered or eliminated by the court during the course of the plan if it appears
 
 *488
 
 to the court, upon motion of the trustee, any creditor or otherwise, that such continuation will impair the debtor’s ability to make all payments under, and to comply with, the plan.
 

 V. Treatment of Fully Secured Mortgage Claims “Outside The Pian.”
 

 The bankruptcy court expressly recognized in its memorandum opinion that a debtor could be designated as disbursing agent for some payments under the plan.
 
 [15]
 
 Nevertheless, the bankruptcy court denied confirmation because the plan called for the making of the current mortgage payments “outside the plan.” Observing that nowhere in the Bankruptcy Code is there any statement whether either secured or unsecured claim payments can be handled outside the plan, the court concluded that “[o]n balance, Chapter 13 policy requires that all payments be made within the plan.” Although we conclude that the bankruptcy court went too far in stating that all claims must be treated within the terms of a proposed plan, we hold that a plan cannot provide that the current portion of a mortgage claim will be made “outside the plan”, as that phrase was used by the bankruptcy court, when the arrearages on the mortgage claim are being cured under § 1322(b)(5).
 

 Several courts have held that treatment of some unsecured claims outside a plan while treating others under a plan amounts to discriminatory classification, and that, therefore, unsecured claims may not be so treated, where such treatment is not justified under the “fairness” test of § 1325(a)(3).
 
 In re Dziedzic,
 
 9 B.R. 424 (Bkrtcy.S.D.Tex.1981);
 
 In re Weeden,
 
 7 B.R. 106 (Bkrtcy.D.R.I.1980);
 
 In re Crago,
 
 4 B.R. 483 (Bkrtcy.S.D.Ohio 1980);
 
 In re Tatum,
 
 1 B.R. 445 (Bkrtcy.S.D.Ohio 1979).
 
 In re Blevins,
 
 1 B.R. 442 (Bkrtcy.S.D.Ohio 1979), in addition, held that this same analysis applies to claims which are only partially secured. The court noted that treatment of the partially secured claim outside the plan would result in discriminatory treatment as between the unsecured portion of the partially secured claim and the other unsecured claims provided for by the plan. These cases rely on the restrictions of § 1322(b)(1), that a plan may “not discriminate unfairly against any class [of unsecured claims],” and of § 1322(a)(3), that if a plan classifies claims it must “provide the same treatment for each claim within a particular class.” Assuming, without deciding, that the foregoing analysis of the restrictions applicable to unsecured and partially secured claims is correct, we note that there is no such restriction as to fully secured claims,
 
 [16]
 
 which “must ordinarily be classified separately as each involves a different claim to property of the debtor.”
 
 Case, supra,
 
 at 847.
 
 Accord, Wittenmeier, supra,
 
 at 87. We therefore agree with those courts which have concluded that fully secured claims may in some instances be dealt with outside a Chapter 13 plan.
 
 See Case, supra; Wittenmeier, supra.
 

 Several sections of Chapter 13 refer to payments “under the plan”
 
 [17]
 
 or to claims “provided for by the plan,”
 
 [18]
 
 suggesting that Congress contemplated that there might be payments not “under the plan” or claims not “provided for by the plan.” Although we do not say that such statutory language must always be so read, such a reading in this case seems consistent with Congress’ intent that debtors be given substantial flexibility in formulating Chapter 13 plans. Section 1325(a)(5), for instance, sets out criteria for the treatment of allowed secured claims “provided for by the plan.” As discussed in
 
 Collier:
 

 
 *489
 
 Section 1325(a)(5) applies only to allowed secured claims
 
 provided for by the plan.
 
 Although the term “provided for by the plan” is not defined by the Code or in its legislative history, the intended meaning seems clear enough. A chapter 13 plan may, but need not, modify the rights of any or all holders of secured claims. Since a plan need not modify allowed secured claims it is discretionary with the debtor whether to make provision in the chapter 13 plan for allowed secured claims. In the event the plan makes no provision for one or more allowed secured claims, the plan is to be confirmed by the court regardless of its acceptance or rejection by holders of allowed secured claims not provided for by the plan and without any other showing being required under section 1325(a)(5). The holders of allowed secured claims not provided for by the plan may seek appropriate relief from the automatic stay in furtherance of any contractual or other remedies available against the chapter 13 debtor or their collateral.
 

 Collier, supra,
 
 § 1325.01 at 1325-20 (footnotes omitted).
 

 Although Chapter 13 may allow some fully secured claims to be treated outside of a plan, a plan may not provide for the making of the current payment on a mortgage claim outside the plan while curing the arrearage on that claim under the plan pursuant to § 1322(b)(5). In
 
 Case, supra,
 
 at 845, the bankruptcy court stated, in reference to treatment under § 1325(a)(5)(B), that “for the Court to exercise power over the secured claim in confirming a plan either with the creditor’s acceptance or pursuant to the ‘cram-down’ provisions, the secured claim must be provided for in the plan.” So too, for the arrearage on a mortgage claim to be cured under § 1322(b)(5), the current mortgage payments while the case is pending must be provided for in the plan. 11 U.S.C. § 1322(b)(5) allows the debtor to “provide for the curing of any default within a reasonable time
 
 and maintenance of payments while the case is pending.”
 
 (emphasis added). Section 1322(b)(5) provides for the curing of any default, then, only when the plan also provides for the maintenance of the current mortgage payments while the case is pending. Conversely, where a fully secured mortgage claim is not treated under the provisions of § 1322(b)(5), or any other provision of Chapter 13, payments on that claim need not be made under the plan. Except where a debtor is not in arrears with respect to the mortgage claim, however, it would not seem advantageous to treat the mortgage claim outside the plan by not taking advantage of § 1322(bX5).
 

 The bankruptcy court asserted the following problems which it believed were created by outside payments:
 

 First and foremost is that the court’s supervision of the plan is jeopardized.... Second, in the event the debtor defaults on outside payments, the creditor would have two options: proceeding against the debtor in state court, which could create havoc with the delicate balance of budget and plan payments that form a plan, or seeking enforcement in the bankruptcy court on an obligation which is arguably no longer within that court’s jurisdiction. Third, trustees may even be entitled to a fee on payments outside the plan.... Finally, the court’s ability to assess and confirm a Chapter 13 plan is hampered if debtors are allowed not only to deal with creditors outside the plan, but effectively shield from the court’s scrutiny the status or even continued existence of the relationship.
 

 We do not believe that the treatment of some fully secured claims outside of a plan, in the limited circumstances allowed here, need jeopardize the court’s supervision nor the creditor’s remedies. Under 28 U.S.C. § 1471(e): “The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of the case.” In the event the debtor defaults on outside payments, the creditor may turn to the bankruptcy court for “adequate protection.”
 
 See
 
 11 U.S.C. § 361. Whether the trustee
 
 *490
 
 will be entitled to a fee on payments made outside the plan does not seem relevant to whether a debtor may or may not provide for such payments. As for the bankruptcy court's ability to assess and confirm a Chapter 13 plan, we believe that the requirement that the debtor file a list of creditors and the right of creditors to look to the court for “adequate protection” should adequately prevent the debtor from shielding from the court’s scrutiny the status and continued existence of the relationship. In
 
 Case,
 
 the court required “that the plan specify all secured claims which are to be handled outside of the plan,” “[f]or purposes of determining feasibility, ... and as a matter of convenience in clarifying for the Court, the Trustee, and the creditor involved what treatment is proposed of a particular claim.”
 
 Case, supra,
 
 at 848. Considering the concerns of the bankruptcy court, the
 
 Case
 
 court stated:
 

 Although the court in
 
 In re Foster,
 
 9 B.R. 482, 7 B.C.D. 521 (Bkrtcy.S.D.Tex.1981) has disagreed with the conclusion expressed here in requiring all secured as well as unsecured claims to be paid through the plan, this Court is of the opinion that the concerns expressed in
 
 Foster
 
 can be adequately dealt with without unduly restricting the Chapter 13 debtor’s options.
 
 As long as the Court has fully considered the feasibility of the plan in conjunction with any payments proposed to be made outside of the plan,
 
 this treatment would not appear to jeopardize the plan or supervision and execution of the plan and accordingly, would accept the advantages and disadvantages of continuing to deal directly with the debtor rather than being bound to the provisions of a confirmed plan which brings with it the albeit protective, but “interfering”, jurisdiction and supervision of the Court. These creditors could pursue remedies independent of those established under a confirmed plan and could do so without affecting the plan being executed. The trustee has no duty to supervise the payment of claims made independently of the plan, and as long as payments under the plan are continued, will not be concerned with any relationship established outside of the plan, or the duration of such a relationship.
 

 Id.
 
 at 848 n.5 (emphasis added). In agreeing with the
 
 Case
 
 court to the extent that Chapter 13 may allow some fully secured claims to be treated outside a plan, we also agree that a bankruptcy court may, consistent with the court’s need, under § 1325(a)(6), to determine the “feasibility” of the plan, require the debtor to reveal all claims which are to be treated outside the plan.
 
 [19]
 

 V. Inside, Outside, Upside Down (Revisited) (Or, How We Compute the Standing Trustee’s Percentage Fee).
 

 Having determined that fully secured mortgage claims may in some instances be dealt with outside a Chapter 13 plan, and that some payments under Chapter 13 plans may be made by the debtor, as disbursing agent, directly to the creditor, we must address what is really the motivating issue in this case — whether the current mortgage payments in this case are to be included in the computation of the standing trustee’s percentage fee.
 
 [20]
 
 The flip side of the question whether claims
 
 may
 
 be treated outside a plan is the question whether, in a given plan, a claim
 
 has in fact been
 
 treated outside the plan. Having claimed that in providing that the current mortgage payments would be made “outside the plan” they were merely providing that they would act as the disbursing agent for these payments, under the plan, the Fosters never
 
 *491
 
 theless contend that these payments should not be included in the computation of the standing trustee’s percentage fee, which is collected from “all payments under plans.” We reject this contention.
 

 Section 1302(d) provides for the court appointment of individuals to serve as standing trustees in cases under Chapter 13, when the number of cases in a district so warrant. Under § 1302(e)(1), a court that has appointed a standing trustee shall fix a maximum annual compensation for such individual, not to exceed the lowest annual rate of basic pay in effect for grade GS-16, and “a percentage fee, not to exceed ten percent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.” “Such individual shall collect such percentage fee,” according to § 1302(e)(2), “from all payments under plans in the cases under this chapter for which such individual serves as standing trustee.”
 

 Section 1302, then, dictates that the percentage fee shall be collected from
 
 all
 
 payments “under plans,” and this, we conclude, includes those payments “under plans” as to which the debtor serves as disbursing agent.
 
 Accord, Case, supra; Centineo, supra.
 
 As stated in Case: “[W]here it is clear, as in the present case, that the secured claims are being provided for under the plan, payment of those claims pursuant to the plan by any method, will subject those payments to the percentage fee of the trustee.”
 
 Case, supra,
 
 at 846. In deciding whether given payments are under a plan for purposes of § 1302(e), we stress that while listing for the court all secured claims which are to be handled outside the plan, as is necessary for the court’s determination of feasibility, will not automatically make payments on those claims subject to the percentage fee, merely labelling payments as “outside the plan,” on the other hand, will not automatically exclude those payments from the computation of the fee. Where a plan provides for the curing of arrearage under § 1322(b)(5), we have held above that it must also provide for the maintenance of payments while the case is pending. We believe that such payments are “under plans” within the meaning of § 1302 and are, therefore, subject to the trustee’s fee.
 
 Cf. Case, supra
 
 (payments relating to claims limited under § 1325(a)(5)(B) are payments “under plans” for purposes of § 1302(e)(2)).
 

 Although we hold that payments on mortgage claims pursuant to § 1322(b)(5) are subject to the standing trustee’s percentage fee, we believe that Congress left much discretion in the bankruptcy court with respect to the computation of the fee. The “ten percent” reference in § 1302(e)(1)(B) is a maximum; a smaller percentage may be assessed where the court deems it appropriate. Section 1302(e)(1)(B) provides that the percentage fee be based on the maximum annual compensation of the standing trustee “and the actual, necessary expenses incurred by such individual as standing trustee.” Although a- case by case determination of the trustee’s fee seems unfeasible, we believe that the bankruptcy court does have wide discretion in setting the fee. In
 
 In re Eaton,
 
 1 B.R. 433 (Bkrtcy.M.D.N.C.1979), a bankruptcy court addressed some of the ways in which the fee could be adjusted in business cases under Chapter 13 where the court found that the fee which would be collected under the standing order in the district would be unconscionable:
 

 There appears to be nothing in the new Code to prevent the Court from making some equitable adjustment of service charges for business cases under Chapter 13. This could be done on a fair and equitable standard for services performed by the Standing Trustee as long as there is not a charge in excess of the 10% of receipts. This differential could be made in the percentage deduction rate itself, or by applying the regular percentage deduction rate only to a portion of the monies received, not to exceed a ceiling set by the Code and the Court. It appears that each business case must be considered in light of the particular circumstances of that case as to the amount
 
 *492
 
 of services which the Standing Trustee is going to be called upon to perform, as compared to the cost of services in other similar cases. The deduction for costs would then be limited accordingly. This can be done very easily in the Order of Confirmation and adjusted later if necessary.
 

 Accord, Case, supra,
 
 at 847. We believe that the same reasoning may be applied to individual cases under Chapter 13 where, for example, a large portion of the payments are mortgage payments for which the debtor is acting as disbursing agent. The Bankruptcy Court for the Southern District of Texas has adopted a General Order
 
 [21]
 
 which sets the Trustee’s compensation at 5% of all payments made under plans (limited to GS-16) and orders the collection of
 
 5%
 
 upon all payments to be used to defray the actual necessary expenses incurred by the Trustees. A rigid fee structure of this nature does not take into consideration the diminished responsibilities (both legal and factual) of the trustee where, for example, the trustee is not called upon to make current mortgage payments because the debtor is acting as disbursing agent with respect to those payments. We believe, therefore, that the General Order should be reassessed insofar as it fails to deal with this situation.
 

 As a related matter we note that the mortgage payments of debtors in Chapter 13 cases may vary dramatically in size, and thus, to the extent that the work of the standing trustee relating to mortgage payments is more or less the same in these cases, a fixed percentage fee would result in much greater compensation in some cases where the trustee’s effort is not proportionately greater. The extra money to pay this fee, in effect, comes from the payments to the unsecured creditors and is one of the principal motivating factors behind label-ling current mortgage payments as “outside the plan.” Even where the trustee is acting as disbursing agent with respect to the current mortgage payments, therefore, it might not be inappropriate to reconsider the fee as applied to cases involving large mortgage payments.
 
 See Case, supra,
 
 at 847 (citing
 
 Eaton, supra).
 

 While all of the factors we have cited militate in favor of a decreased fee, we recognize that there may be factors militating against such a solution and we do not purport to set forth all of the factors bearing on the fee.
 
 [22]
 
 The trustee’s fee is a matter for the bankruptcy court in the first instance and we do not intend by this opinion and order to direct that an adjustment of the General Order be made. We merely direct that the bankruptcy court reconsider the General Order in light of this opinion. As the discussion in
 
 Eaton
 
 indicates, in structuring a fee there are several possible formulae by which the same result may be reached.
 

 VII. Inside, Outside, Right Side Up.
 

 In summary, in its efforts to make Chapter 13 an attractive alternative for overextended debtors, Congress provided for a significant amount of flexibility in the debtor’s plan formulation. Two examples appear in this case: the choice of disbursing agent and the choice of how to deal with fully secured mortgage claims. The role of the bankruptcy court in supervising the employment of Chapter 13 should not be down-played, however. Although Congress has expressly limited the criteria for determining whether a plan is to be confirmed, those criteria give bankruptcy courts significant responsibility in scrutinizing proposed plans. Our greatest concern in this case, though, is the use of these issues as a semantic battleground for what we believe to be the real concern in this case — the trustee’s fee. Clearly this is the primary reason for the Fosters’ desire to serve as disbursing
 
 *493
 
 agents and to label their payments as “outside the plan.” We are satisfied that Congress did not intend the trustee’s fee to turn on the labels employed by a debtor. In determining what payments are subject to the fee, then, we look to the actual treatment of the claims and not the semantic treatment. Specifically, in this case, we find no warrant in the Bankruptcy Code for labelling part of the treatment of a claim “outside the plan” and part of it “under the plan” where the entire treatment is that which has been made available to the debt- or through the provisions of Chapter 13. The fee does exist, however, to cover the costs — the maximum annual compensation of the standing trustee and the actual, necessary expenses incurred by such individual as standing trustee — of making Chapter 13 relief available to overextended debtors. To the extent possible, then, we believe that the fee should reflect those costs.
 

 Because of the ambiguity in the Fosters’ use of the term “outside the plan,” and in light of our holdings that a Chapter 13 plan may provide for the debtor to serve as disbursing agent as to some payments under the plan but may not provide for the making of current mortgage payments outside the plan while providing for the curing of the arrearage on the mortgage claim under the plan, we vacate the order of the bankruptcy court which denied confirmation of the plan and remand for reconsideration of confirmation after clarification of the plan by the Fosters.
 

 VACATED and REMANDED.
 

 . Berenstain,
 
 Inside Outside Upside Down
 
 (1968). -
 

 . Another consideration relating to the advisability of the debtors acting as disbursing agent which has been raised in this case stems from the allegation that some standing trustees in the Southern District of Texas have in the past been late in some instances in making the current mortgage payments that they are obligated to make, possibly resulting in the accrual of late charges under the related mortgages. Apart from the question of where the money to pay any asserted and enforceable late charges is going to come from, delays in making the current mortgage payments are clearly not in the best interest of the mortgage holder or the debtor. If we are truly committed to debtor rehabilitation, it is troubling to put this kind of strain on the debtor’s continuing relationship with his mortgage holder.
 

 [1]
 

 . The court is indebted to the Honorable Arthur L. Moller who, at the request of the court, filed a brief as amicus curiae and argued the case.
 

 [2]
 

 . The current version of Chapter 13, applicable in this case, was adopted as part of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549, which became effective on October 1, 1979.
 

 [3]
 

 . Throughout this opinion, we will use the term “mortgage claim” to refer to “a claim secured only by a security interest in real property that is the debtor’s principal residence.” See 11 U.S.C. § 1322(b)(2).
 

 [4]
 

 .11 U.S.C. § 109(e) provides:
 

 Only an
 
 individual with reguiar income
 
 that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and non-contingent, liquidated, secured debts of less than $350,000, or an individual with regular
 
 *483
 
 income and such individual’s spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and non-contingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.
 

 (emphasis added). 11 U.S.C. § 101(24) defines “individual with regular income” as an “individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker.”
 

 [5]
 

 .“Liquidating bankruptcy proceedings offer debtors limited relief in return for the relinquishment of their non-exempt assets for ratable distribution among creditors.” 5
 
 Collier on Bankruptcy,
 
 § 1300.02 at 1300-19 (15th ed. 1981).
 
 See
 
 11 U.S.C. §§ 701-766.
 

 [6]
 

 . 11 U.S.C. § 1322(c) provides:
 

 The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.
 

 [7]
 

 . 11 U.S.C. § 303 provides that “[a]n involuntary case may be commenced only under chapter 7 or chapter 11 of this title.”
 
 See also
 
 11 U.S.C. § 1321.
 

 [8]
 

 . In addition, 11 U.S.C. § 521 lists the following duties of the debtor:
 

 The debtor shall—
 

 (1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, and a statement of the debtor’s financial affairs;
 

 (2) if a trustee is serving in the case, cooperate with the trustee as necessary to enable
 
 *484
 
 the trustee to perform the trustee’s duties under this title;
 

 (3) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate; and
 

 (4) appear at the hearing required under section 524(d) of this title.
 

 As
 
 Collier
 
 points out, subsection (3) was probably not meant to apply literally to a Chapter 13 debtor.
 
 Collier, supra,
 
 § 1300.80 at 1300-153.
 

 [9]
 

 . Subject to subsections (a) and (c) of this section, the plan may—
 

 (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated;
 

 (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor’s principal residence, or of holders of unsecured claims;
 

 (3) provide for the curing or waiving of any default;
 

 (4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any unsecured claim;
 

 (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
 

 (6) provide for the payment of all or any part of any claim allowed under section 1305 of this title;
 

 (7) provide for the assumption or rejection of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of this title;
 

 (8) provide for the payment of all or any part of a claim against the debtor from property of the estate or property of the debtor;
 

 (9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity; and
 

 (10) include any other appropriate provision not inconsistent with this title.
 

 11 U.S.C. § 1322(b).
 

 [11]
 

 . “Chapter XIII” is the designation used for the provisions of the Bankruptcy Act of 1898 appearing at 11 U.S.C. §§ 1001-1086 which were revised by “Chapter 13” of the Bankruptcy Reform Act of 1978.
 

 Under 11 U.S.C. § 1325, the debtor no longer must obtain the acceptance of secured creditors whose claims are dealt with by the plan. § 1325(a)(5) provides two alternative ways of dealing with allowed secured claims provided for by the plan.
 

 [12]
 

 .See in re Hines, 7 B.R. 415 (Bkrtcy.D.S.D.1980).
 

 [13]
 

 . In addition, § 1325(a)(1) requires compliance with the provisions of Chapter 13 and one of the provisions of Chapter 13, § 1326(b), provides that ordinarily funds will be disbursed by the standing trustee.
 

 [15]
 

 . The bankruptcy court stated: “A plan can specify means and amount of payments on secured claims (i.e., “in-plan payments”) while leaving the debtor the responsibility as disbursing agent of physically paying the creditors.”
 

 [16]
 

 . By “fully secured claim” we mean a secured claim as to which the value of the collateral securing the claim is equal to or greater than the amount of the claim and as to which the payments, therefore, cannot be “crammed down” under the provisions of § 1325(a)(5).
 

 [17]
 

 .
 
 See, e.g.,
 
 11 U.S.C. §§ 1302(e)(2) and 1326(b).
 

 [18]
 

 .
 
 See, e.g.,
 
 11 U.S.C. §§ 1325(a)(5) and 1328(a).
 

 [19]
 

 . 11 U.S.C. § 521, in fact, requires the debtor to file with the court “a list of creditors, and unless the court orders otherwise, a schedule of. assets and liabilities, and a statement of the debtor’s financial affairs.”
 

 [20]
 

 . Much of the argument in this case concerned the effects of including the mortgage payments in the computation of the trustee’s percentage fee. The Fosters argued that the larger fee would defeat some plans which could otherwise succeed, by leaving insufficient distributions to the unsecured creditors. The bankruptcy court was of the opinion that such marginal plans should probably not be confirmed.
 

 [21]
 

 . Adopted January 9, 1980.
 

 [22]
 

 . One of the factors which the bankruptcy court will want to consider is whether a portion of the revenues being collected by the standing trustees are ending up in the U. S. Treasury pursuant to § 1302(e)(2)(B).