**IN RE: Birgit Gerda HOYT–KIECKHABEN, Debtor.**

**Bankruptcy Case No. 11–13705 EEB**

United States Bankruptcy Court, D. Colorado.

Signed February 23, 2016

Sean Cloyes, Colorado Springs, CO, for Debtor.

## ORDER ON TRUSTEE'S MOTION TO DISMISS AND DEBTOR'S CERTIFICATION TO OBTAIN DISCHARGE

Elizabeth E. Brown, Bankruptcy Judge

THIS MATTER is before the Court following an evidentiary hearing on the Motion to Dismiss, filed by Douglas B. Kiel, chapter 13 trustee (the "Trustee") and the Debtor's Certification requesting the entry of a general discharge. Neither party disputes that the Debtor did not fully comply with her plan's statement that she would make monthly mortgage payments directly to her lender. In fact, she failed to make 24 payments, totaling $49,000. Nevertheless, she asserts she is entitled to receive her discharge or, alternatively, that the case should be converted to a chapter 7 proceeding. The Trustee contends her failure to make the direct payments to the lender precludes her from obtaining a discharge.

## I. BACKGROUND

Many debtors, including the Debtor in this case, file chapter 13 cases in order to have an opportunity to cure past mortgages defaults and save their homes from foreclosure. Typically, (and in this case), the plan provides that the debtor will make payments to the chapter 13 trustee to pay disposable income to the unsecured creditors as well as a monthly amount necessary to repay the past-due mortgage payments. Since these payments are paid directly to the trustee, they are referred to as the "Trustee Payments." In addition to these payments, the plan typically (and in this case) provides that the debtor will continue to make the future contractual monthly mortgage payments directly to the mortgage holder (the "Direct Payments"). Debtors have been allowed to make direct mortgage payments as an accommodation so that they will not have to incur a trustee fee for passing the payment through the Trustee's office to the mortgage holder.

Whenever the plan provides for the curing of an arrearage on a mortgage, the trustee will send out a routine notice to the mortgage lender near the conclusion of the plan to determine whether the mortgage is in fact "current." Fed. R. Bankr.P. 3002.1. The lender is given an opportunity to object and to declare any remaining unpaid mortgage arrears. In the past, it was fairly uncommon to receive an objection. On occasion, however, the lender would disclose that the debtor had incurred late charges, attorney fees, or had missed a payment or two. The debtor would then have a chance to cure the defaults before the conclusion of the sixty-month plan.

In the past year, however, this Court and others within this district have seen a new and disturbing trend emerge in chapter 13 cases. At the conclusion of the three- or five-year plan, the lender objects on the basis that it has not received the Direct Payments from the debtor, often over a substantial portion of the plan's term. Such is the case here.

At hearing, the Debtor testified that, despite one modification of her plan, she could not remain current on the mortgage payments. She is a self-employed therapist who works out of her home. With the recent lengthy recession, her business declined. She attempted to obtain a loan modification from the lender, but was unsuccessful.

Why this lender, and many others recently, have chosen to remain silent in the face of such substantial defaults remains a mystery to the Court. At any time, these lenders could seek relief from the automatic stay or file a motion to dismiss. Instead they do nothing until they respond to the Rule 3002.1 notice near the conclusion of the plan. This Court has begun to ask these creditors (although not the creditor in this case) why they have chosen to remain passive. Their attorneys hem and haw and, without saying so directly, have led the Court to understand that this is part of the fall out in the mortgage industry with securitized mortgages passing through so many different hands that it takes a long time before someone catches on to the state of the loan and then is able to put together a complete file of the loan documentation. Or perhaps it reflects the fact that so many homes have been foreclosed on in recent years that lenders simply did not want to take ownership of any more property until the market had recovered sufficiently. Or perhaps it is because the debtor had applied for a loan modification and the lender substantially delayed responding to the application, but placed the loan in suspense in the meantime. Whatever the cause, the courts in this district are now faced with many cases in which the debtor did not make the Direct Payments for a substantial period of time.

## II. DISCUSSION

### A. Discharge Under § 1328(a)

■ Section 1328(a)[1] provides that "as soon as practicable *after completion by the debtor of all payments under the plan* ... the court shall grant the debtor a discharge of all debts provided for by the plan." (emphasis added). Without any case law support, the Debtor argues that she has satisfied this precondition to a discharge because she made all of the Trustee Payments. The Trustee argues that the Direct Payments are also "payments under the plan," and her failure to complete them precludes her discharge. Several recent decisions from within this district support the Trustee's position. *See In re Formaneck,* 534 B.R. 29 (Bankr. D.Colo.2015); *In re Gonzales,* 532 B.R. 828 (Bankr.D.Colo.2015); *In re Furuiye,* Case No. 10–15854 SBB, Docket No. 85 (Bankr. D. Colo. April 7, 2014); *In re Daggs,* Case No. 10–16518 HRT, Docket No. 49 (Bankr. D. Colo. January 6, 2014).

So far only one circuit court has directly addressed the question of whether Direct Payments are "payments under the plan." In *In re Foster,* 670 F.2d 478 (5th Cir. 1982)[2], the Fifth Circuit held that, when a chapter 13 plan provides for Direct Payments to a creditor, those payments are nevertheless payments "under the plan."[3] This court and other lower courts have reached this conclusion based on a straightforward reading of the Code's language. Payments are deemed payments "under the plan," if they are made pursuant to the provisions or terms of a plan, or are "dealt with" by a plan. *See, e.g., In re Perez,* 339 B.R. 385, 390 n. 4 (Bankr. S.D.Tex.2006); *In re Kessler,* 2015 WL 4726794 (Bankr.N.D.Tex. June 9, 2015); *In re Hankins,* 62 B.R. 831, 835 (Bankr. W.D.Va.1986); *In re Russell,* 458 B.R. 731, 739 (Bankr.E.D.Va.2010).

The context in which this issue arose in *Foster* was a debtors' appeal of the bankruptcy court's decision refusing to confirm their plan because it provided for Direct Payments by the debtors to the mortgage lender. The bankruptcy court held that the chapter 13 trustee had to act as a conduit for the payment to creditors on *all* claims owed by the debtor. The *Foster* court first dispelled this notion by pointing to the historical treatment of secured claims under Bankruptcy Act of 1898. The Act "required that secured creditors whose claims were dealt with by a plan approve the plan." *In re Foster,* 670 F.2d at 485. Practice under the Act evolved in response to this requirement of secured creditor approval. Whenever the debtor could not obtain the necessary approval, he would simply propose a plan that made no provision for the holdout secured creditor. In this sense, the secured creditor's treat-

---

1. All references to "section" or "§" shall refer to Title 11, United States Code, unless expressly stated otherwise.

2. The *Foster* decision has been overruled by statute in one respect. The *Foster* court held, in part, that the trustee fee could be assessed on mortgage payments even if the debtor disbursed the payment directly to the mortgage lender. "Congress's enactment of 28 U.S.C. § 586(e)(2) limited the application of a trustee's commission to a percentage fee from all payments *received by* the trustee." *In re Reid,* 179 B.R. 504, 508 n. 2 (E.D.Tex.1995) (emphasis added). "Aside from this one point,

*Foster* retains its vitality." *In re Perez,* 339 B.R. 385, 390 n. 3 (Bankr.S.D.Tex.2006).

3. In *In re Aberegg,* 961 F.2d 1307 (7th Cir. 1992), without an explicit analysis of the phrase "under the plan," the Seventh Circuit agreed with *Foster* and held that § 1322(a)(1) permits Direct Payments. In so doing, the court rejected the chapter 13 trustee's argument that § 1322(a)(1) requires a debtor to "surrender to the trustee the entire portion of the debtor's future income earmarked for payment of creditors *under the [p]lan.*" 961 F.2d at 1309 (emphasis added).

ment remained "outside the plan" to avoid the bar to confirmation. *Id.* (citing *In re Bevins,* 1 B.R. 442, 443 (Bankr.S.D.Ohio 1979)). Thus, "outside the plan" signified a case in which the plan made *no* provision for that secured creditor's claim.

By way of contrast, in today's practice in this district the phrase "outside the plan" is used when a payment is made directly by the debtor to the secured creditor. It is used to denote who acts as the disbursing agent for the payment. When the trustee acts as a conduit, making the payment to the creditor, parties refer to this as a payment "under the plan." When the debtor acts as the disbursing agent, it is referred to as a payment "outside the plan." But in truth, regardless of who disburses the payment, it is remains a payment "under the plan" whenever the plan contains a provision effecting the treatment of that secured creditor's claim. When the plan specifies that the debtor will cure defaults by making payments to the trustee and that the debtor will then make Direct Payments of future contractual payments to the lender, the plan is nevertheless modifying that secured creditor's claim to the extent of effectuating a cure of pre-petition defaults. The plan's provision for even this limited modification of the claim makes all the payment arrangements affecting this claim "under the plan."

■ The *Foster* court acknowledged that "[o]ne of the primary concerns of Congress in the 1978 revisions of Chapter 13 was the enhancement of the 'flexibility' of debtors in the formulation of Chapter 13 plans." 670 F.2d at 486 (citing S.Rep. No. 989, 95th Cong., 1st Sess. 141 (1978), U.S.Code Cong. & Admin. News 1978, p. 5927)). Thus, the court recognized that the Bankruptcy Code contains no absolute prohibition of Direct Payments by a debtor. Nevertheless, despite this enhanced flexibility in formulating chapter 13 plans,

the question of whether the debtor should be allowed to act as the disbursing agent on some payments "is very much a matter left to the considered discretion of the bankruptcy court." *Id.*

Section 1326(a)(1)(A) provides that "[u]nless the court orders otherwise," the debtor is to make the payments proposed by the plan "to the trustee." This statute provides two explicit exceptions. Subsection (B) provides that the debtor shall make post-petition payments "scheduled in a lease of personal property directly to the lessor ... reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment." Subsection (C) requires the debtor to make direct post-petition payments of "adequate protection ... to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor ... reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment." These exceptions are provided only for personal property debts tied to either leases or purchase money security interests. There is no explicit exception for direct payment of debts secured by real property, except of course for § 1326(a)(1)'s prefatory language "unless the court orders otherwise."

Returning to issue at hand, when the court "orders otherwise" to allow the debtor to act as the disbursing agent of the Direct Payments, the plan is nevertheless providing for this secured claim. All payments, regardless of who disburses them, are payments "under the plan." If the debtor truly wants to take care of a secured claim "outside the plan," then the plan must not make any provision for the debt.

Critical to the analysis in *Foster*, the court held that, if a debtor elects to cure the arrearage on a secured claim under § 1322(b)(5), the cure is permitted "only when the plan also provides for the maintenance of the current mortgage payments while the case is pending." *In re Foster*, 670 F.2d at 489. The court concluded that both the cure and regular payments under § 1322(b)(5) are payments "under the plan," regardless of who makes the payments to the mortgage holder, stating that

> we find no warrant in the Bankruptcy Code for labelling part of the treatment of a claim "outside the plan" and part of it "under the plan" where the entire treatment is that which has been made available to the debtor through the provisions of Chapter 13.

*Id.* at 493. Although Foster addressed only whether a plan providing for direct payments by the debtors to a mortgage creditor was confirmable, this same analysis applies to the question of whether the debtor is entitled to a discharge under § 1328(a). *See In re Heinzle*, 511 B.R. 69 (Bankr.W.D.Tex.2014).

In *In re Gonzales*, 532 B.R. at 832, the court also looked to the Supreme Court's decision in *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), in which the Court construed the phrase "provided for by the plan" in § 1328(a). The Supreme Court described the debts that are discharged on completion of payments "under the plan." It noted that the "most natural reading of the phrase to 'provid[e] for by the plan' is to 'make a provision for' or 'stipulate to' something in a plan." 508 U.S. at 473, 113 S.Ct. 2187. It stated that "[a]s used in § 1328(a) that phrase is commonly understood to mean that a plan 'makes a provision for,' 'deals with,' or even 'refers to a claim.'" *Id.* at 474, 113 S.Ct. 2187. Recognizing that "under the plan," is a different phrase than "provided for by the plan," the court in *Gonzales* concluded, however, that

a construction of the "payments under the plan" language in § 1328(a) narrowly to include only those payments directed to the chapter 13 trustee is impossible to reconcile with the Supreme Court's broad construction of "provided for by the plan," in the same Code section, to include claims that are merely referred to by the plan.

532 B.R. at 832.

■ The Debtor acknowledges there is no reported authority supporting her position. She nevertheless urges the Court to consider two arguments that had not been raised and were, therefore, not addressed in other reported decisions in this district on this issue. First, the Debtor notes that, under § 1322(d), a plan may not provide for payments for a period longer than five years. She observes that mortgage payments for the vast majority of debtors extend far longer than five years—until 2036 in her case. From this fact, she extrapolates that regular mortgage payments cannot be considered plan payments. Second, she asserts that the language of § 1322(b)(5) allows for the cure of defaults and the maintenance of regular payments on any claim "on which the last payment is due *after* the date on which the final payment *under the plan* is due" (emphasis added), suggesting that the regular payments referred to in this section are not payments under the plan.

The Court disagrees. Section 1322(b)(5) is focused on limiting the kind of debts a debtor may elect to treat under that section to long-term debts, rather than distinguishing cure payments from regular payments as to whether they are payments under the plan. The regular payments while a case is pending are payments "a plan may provide for" under § 1322(b)(5). Payments made after the case is no longer pending are required by the terms of the long-term debt itself, which, pursuant to

§ 1328(a), is not discharged. These post-plan payments are not provided for under the chapter 13 plan or by the provisions of chapter 13. Thus, they are not payments under a plan. Similarly, § 1322(d) contemplates that plan payments will extend no longer than sixty months. However, there is nothing in the wording of this section that precludes regular mortgage payments while the case is pending from being considered payments "under the plan." *See In re Russell,* 458 B.R. at 739 (explaining that § 1322(d) is not phrased in terms of "under the plan" or "through the trustee," but rather says that plan may not "provide for payments" over a period exceeding five years).

█ Ultimately the Court finds the reasoning of the *Foster* case to be the most persuasive. Both the cure payments and regular payments while the case is pending are equal and necessary parts of a plan's treatment of a secured claim under § 1322(b)(5). It follows that any payment made to effectuate the plan's treatment of this claim is a "payment under the plan." The Court concludes that the Direct Payments were payments under the Debtor's plan that she did not complete. She is, therefore, not entitled to a discharge under § 1328(a).

### B. Dismissal or Conversion Under § 1307(c)(6)

█ Section 1307(c)(6) provides that, upon the request of a party in interest, the court may convert a chapter 13 case to chapter 7 or dismiss the case, whichever is in the best interests of creditors and the estate, for "cause," including the *"material default* by the debtor *with respect to a term of a confirmed plan."* (emphasis added).

There is no question that, under a natural reading of § 1307(c)(6), as well as under established case law, the Direct Payments on the mortgage debt were a "term"

of the Debtor's confirmed Plan. In Paragraph IV. B. 1., the Debtor's plan classified the claim of the first mortgage holder in Class Two A, and specifically described the Debtor's intended treatment of the claim. By referring to the mortgage debt, stating that arrears would be cured and that regular payments of a particular amount, starting on a particular date, would be made directly to the creditor, the Plan clearly provided for the treatment of this claim under § 1322(b)(5). "The [Direct Payments] so provided [are] as much a 'term' of the plan as any of its other provisions." *In re Daggs,* Case No. 10–16518 HRT at 2 (quoting *Arvada 1st Industrial Bank v. Richardson (In re Richardson),* No. 81 K 2211 (Bankr. D. Colo. October 29, 1981)). In § 1328(a), the Bankruptcy Code describes a chapter 13 discharge as extending to "all debts provided for by the plan ... except any debt provided for under section 1322(b)(5)." Thus, the Code "unmistakably contemplates that a plan 'provides for' a claim when the plan cures a default and allows for the maintenance of regular payments on that claim, as authorized by § 1322(b)(5)." *Rake v. Wade,* 508 U.S. at 474, 113 S.Ct. 2187. It would hardly make sense to find that a plan "provides for" a claim but that the provision for the claim is not a "term" of the plan. Moreover, the Debtor has conceded that her default on the Direct Payments is material in amount.

█ Section 1307(a), however, allows a debtor to request conversion of her case at any time. In this case, the Debtor requested that her case be converted to chapter 7 if the Court determines she is not entitled to a chapter 13 discharge. Neither the Trustee nor the mortgage holder opposed conversion and, in the absence of any suggestion of bad faith, the Court finds that conversion is appropriate.

## III. CONCLUSION

Based on the foregoing, it is hereby:

ORDERED that the Trustee's opposition to the Debtor's Certification to Obtain a Chapter 13 Discharge is SUSTAINED and Debtor's request is DENIED; and

FURTHER ORDERED that the Trustee's request for dismissal is DENIED and the Debtor's alternative request for conversion is GRANTED. This case is hereby converted to a chapter 7 proceeding.