**In re Virginia FIEGI, dba Black & White Ranch, Debtor.**

**Bankruptcy No. 685–09099–R13.**

United States Bankruptcy Court, D. Oregon.

July 1, 1986.

Keith Y. Boyd, McGavic & Boyd, P.C., Eugene, Or., for debtor.

Fred Long, Eugene, Or., trustee.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

The debtor filed her Chapter 13 petition herein on December 17, 1985. Her original plan, dated December 31, 1985, provided for annual payments to the trustee in the amount of $23,200. At the adjourned confirmation hearing held on May 14, 1986, the debtor, through her attorney, Keith Boyd, submitted an amended plan dated May 14, 1986. Under this plan, she proposes to pay her mortgage payments, to Certified Mortgage Company in the amount of $400 each month, outside the plan. The remainder of her debts, both secured and unsecured, are to be paid through annual installments of $29,400, payable to the trustee on November 30 of each year, the first such payment to be made on November 30, 1986 and the last such payment to be made on November 30, 1990. The plan provides for payment in full to all secured creditors, including principal and accrued pre-petition and post-petition interest at their respective contract rates. In addition, secured creditors retain their liens until paid. All of the secured creditors are to be paid in full by the 1989 plan payment with the exception of Certified Mortgage Company, described above and Farmers Home Administration and Agricultural Stabilization and Conservation who are both over-secured in debtor's real property. These creditors will continue to receive payments in accordance with their contracts with the debtor following completion of the plan.

Unsecured creditors would not receive any payment under the plan until the final payment on November 30, 1990. Unsecured claims will, however, be paid in full together with post-petition interest calculated at nine percent (9%) on their claims accruing to the date of payment.

The debtor is engaged in the business of farming. The income for the annual plan payments will be derived from the annual harvest and sale of her crops.

The trustee, Fred Long, objected to confirmation of the plan contending that payments should be made on a monthly, not annual, basis.

Three secured creditors filed similar objections to confirmation, Farmer's Home Administration, Floyd A. Boyd Company and South Valley State Bank, (hereinafter objecting creditors). They contend that the plan is not feasible. They also contend the December, 1985 plan did not adequately protect their secured claims. This latter contention no longer has any merit in light

of the increased payments proposed by the debtor in her May, 1986 plan.

There are two issues to be resolved by this court. First, is it permissible for a Chapter 13 plan to provide for annual payments? Second, if so, is the debtor's plan in this case feasible?

■ As stated above, the trustee has objected to confirmation asserting that the debtor has failed to comply with 11 U.S.C. § 1326(a)(1) which states:

"Unless the court orders otherwise, the debtor shall commence the payments proposed under the plan within 30 days after the plan is filed."

Objecting creditors join with the trustee's objection.

The debtor maintains that since her plan calls for annual payments commencing in November, 1986, that she is in compliance with 11 U.S.C. § 1326(a)(1). The source of funds for plan payments will be proceeds of the debtor's harvest, which is not complete until late October or November of each year. Thus, she is not able to make a plan payment until the time specified in the plan. Finally, debtor maintains that there is no requirement, in the Bankruptcy Code, that Chapter 13 plan payments must be made on a monthly basis.

The debtor's Chapter 13 Statement and Schedules show total secured debts in the amount of $107,224.08 and unsecured debts in the total amount of $11,255.13. With the exception of the debt owed to Certified Mortgage Company, scheduled in the amount of $17,296.81, the secured creditors have contracted with the debtor for annual payments on their debts to be paid sometime in the fall. The unsecured claims appear to be either on a monthly billing or open account basis. None of the unsecured creditors have objected to confirmation of the debtor's May, 1986 plan.

Congress has provided that ... "Only an individual with regular income ... may be a debtor under Chapter 13 ..." 11 U.S.C. § 109(e). 11 U.S.C. § 101(27) defines an individual with regular income to mean an "... individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under Chapter 13 of this title, other than a stockbroker or a commodity broker;"

It is clear that Congress intended, in enacting the Bankruptcy Reform Act of 1978 (the Bankruptcy Code), to expand the eligibility for relief under Chapter 13 from what had previously existed under the Bankruptcy Act. House Report No. 95–595, 95th Cong. 1st Sess. 311–14 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6268, 6269 states:

Paragraph (23) [Ed. Note: Pub.L. No. 98–353 redesignated section 101(24) as section 101(27).] defines "individual with regular income." The effect of this definition, and its use in section 109(e), is to expand substantially the kinds of individuals that are eligible for relief under chapter 13, Plans for Individuals with Regular Income, which is now available only for wage earners. The definition encompasses all individuals with incomes that are sufficiently stable and regular to enable them to make payments under a chapter 13 plan. Thus, individuals on welfare, social security, fixed pension incomes, or who live on investment incomes, will be able to work out repayment plans with their creditors rather than being forced into straight bankruptcy. Also, self employed individuals will be eligible to use chapter 13 if they have regular income. However, the definition excludes certain stockbrokers and commodity brokers, in order to prohibit them from proceeding under chapter 13 and avoiding the customer protection provisions of chapter 7.

Accordingly, the courts have held that the idea of regular income should be broadly construed. *In re King,* 9 B.R. 376 (Bankr.D.Or.1981); *In re Iacovoni,* 2 B.R. 256 (Bankr.D.Utah 1980).

In *In re Hines,* 7 B.R. 415 (Bankr.D.S.D. 1980) the court found that a farmer with regular, though fluctuating, annual income was a person with regular income under 11 U.S.C. § 101(27) and 11 U.S.C. § 109(e) and therefore his plan providing for semi-annu-

997

al payments to the trustee was confirmed even though the farmer's annual income might vary substantially due to weather conditions, market prices, etc.

Accordingly, this court concludes that a Chapter 13 plan may be funded with annual, as opposed to monthly payments particularly where, as in this case, the majority of the creditors have contracted to receive annual payments from the debtor.

█ This court must then consider whether or not the May, 1986 plan proposed by debtor is feasible. 11 U.S.C. § 1325(a)(6) requires the court to find that "the debtor will be able to make all payments under the plan and comply with the plan.", in order to confirm a plan under Chapter 13.

Objecting creditors contend that the plan is not feasible as the plan fails to provide for irrigation payments, real property taxes and that the expenses of farming and the debtor's living expenses as projected are unreasonably low.

The only evidence presented at the adjourned confirmation hearing was by the debtor. She and her son, Everett Fiegi, testified in substance that the debtor has farmed this particular farm by herself, with her late husband and with the help of her son, Everett Fiegi, for almost forty years. Further, the alfalfa crop has already been planted, the debtor and Everett Fiegi provide almost all of the labor necessary to harvest the crop, the machinery and equipment used in the harvest are presently in good condition, some fertilizer has been given to them by a neighbor, some chemical spray is left over from last year and no chemicals are anticipated to be purchased for the 1986 crop year. Finally, they testified that the debtor's living expenses are low since the debtor is able to raise most of her own food. The debtor further testified that her children are responsible for real property taxes on the majority of her farm which she has conveyed to them retaining a life estate. Everett Fiegi testified that the current price for wheat is $123 per ton and that for alfalfa it is $80 per ton. He also testified

concerning the expected yield or total tons of each crop to be produced by the farm and the anticipated annual gross income of $44,820. He further testified that the anticipated annual expenses are $15,420, including the debtor's living expenses, leaving adequate funds to make the required annual payments.

Based upon this testimony, the court finds the projected expenses and income projections to be reasonable and therefore concludes that the debtor's May, 1986, Chapter 13 plan is feasible.

█ The Code also requires the plan be proposed in good faith. 11 U.S.C. § 1325(a)(3). Debtor's plan provides for full payment, with interest to all creditors. Accordingly, the court finds this plan is proposed in good faith.

The debtor's May 14, 1986 Chapter 13 plan should be confirmed. An appropriate order of confirmation shall be entered herein.

This opinion shall constitute findings of fact and conclusions of law, they shall not be separately stated.