In re: Lawrence Eugene HINES, dba Larry's Farm Service, adba Hines Custom Farming, Alexandria, SD and Vickie Lynn Hines, Debtors.

Bankruptcy No. 480–00009.

United States Bankruptcy Court, D. South Dakota.

Nov. 26, 1980.

Terry L. Pechota, U. S. Atty., Sioux Falls, S.D., for creditors ASCS and SBA.

E. Steeves Smith, Tinan, Padrnos, Smith & Saukerson, Mitchell, S.D., for creditor Massey-Ferguson Credit Corp.

J. Bruce Blake, Sioux Falls, S.D., for debtors.

Rick A. Yarnall, Dana, Golden, Moore & Rasmussen, Sioux Falls, S.D., Trustee in Bankruptcy.

PEDER K. ECKER, Bankruptcy Judge.

Lawrence and Vickie Hines, Debtors, filed a Chapter 13 Petition on January 11, 1980. The Trustee held a Meeting of Creditors on February 6, 1980. The Court held a hearing on confirmation of Debtors' proposed Chapter 13 Plan. The Court took the matter under advisement with briefs to be

filed by the United States of America on behalf of the ASCS and SBA, by the Trustee, by Debtors' Counsel, and by Massey–Ferguson Credit Corporation. Only the Trustee and Massey–Ferguson Credit Corporation filed briefs.

## FACTS

Debtors' Chapter 13 Plan divides the creditors into six classes. Under Debtors' Chapter 13 Plan, Debtors will pay the Class I, II, III, IV and V creditors outside the plan. Debtors will pay the Trustee $500.00 twice a year for a total of five years. After the Trustee's deduction for his compensation and expenses of administration, the Trustee is directed to pay the remainder of the $5,000.00 to the Class VI creditors (unsecured claimants).

The Class I creditor is a priority tax creditor to be paid $151.00.

The Class II creditor is the Department of Agriculture (ASCS Office) with a security interest in barley and oats with a liquidation value. At Debtors' hearing Lawrence Hines, Debtor, testified that most of the barley and oats comprising ASCS's security has been used up by Debtors in the normal course of their business (farming). In Debtor's opinion, the remaining barley and oats were worth a liquidation value of $630.00.

The Class III creditor is the Livestock State Bank and the SBA, with a $10,000.00 first real estate mortgage on Debtors' homestead plus a security interest in farm machinery, equipment and vehicles worth, in Debtor's opinion, a liquidation value of $25,350.00.

The Class IV creditor is Massey–Ferguson Credit Corporation, hereinafter Massey. Debtors have divided the treatment of Massey into three subdivisions. Subdivision 1 treats Massey in the following manner:

"1. Claimant has a secured security interest in a combine, which sometime prior to filing was damaged by fire. The combine and the cornhead therefor have been involved in considerable litigation in United States Bankruptcy Court. It is contemplated that the matter of the proceeds of the fire insurance policy and the disposition of such proceeds will be litigated. Debtor proposes that he will pay on this claim in accord with any settlement agreement reached as may be approved by the Bankruptcy Judge or by any judicial determination made by the bankruptcy Judge and the Plan then amended or modified to conform with the same, if necessary."

Under Subdivision 2 Debtors propose to pay Massey a liquidation value of $2,500.00 for a plow. Under Subdivision 3 Debtors propose to pay Massey a liquidation value of $2,000.00 for corn planters.

The Class V creditor, Tri–County Distributors, is treated under Debtors' Plan as a

"purported secured claimant claiming a mechanic's lien on duals for a White Tractor having a value of $800.00. This matter is or shortly will be in litigation and debtor will comply with whatever settlement agreement or Court determination is made by the Bankruptcy Judge, and if necessary the Plan will be amended and modified to conform with such approved settlement or judicial determination."

The Class VI creditors are the general unsecured claimants.

The Trustee made the following report to the Court. Debtors are farmers engaged in custom farming and raising their own crops. Under the Plan Debtors will pay Trustee $1,000.00 annually for a period of five years for a total of $5,000.00. After Trustee's deduction of ten per cent (10%) for compensation and expenses of administration, based only on the $5,000.00 figure, the Class VI unsecured claimants would receive approximately a 5.2 per cent dividend. Further, Debtors are to pay approximately $5,500.00 to creditors outside the plan, and depending upon the result of the litigation between Debtors and Massey and Tri–County Distributors, that figure could be substantially higher.

The Trustee did not recommend confirmation due to (1) the substantial payments made by Debtors to creditors outside the

plan, and (2) that since farming is a speculative business the Trustee is unable to determine if the plan is feasible or in the best interests of the creditors.

Massey filed Proof of Claim No. 27 as a secured creditor on July 10, 1980, for the amount of $46,479.47. Massey claimed a security interest in the combine, the attachments to the combine, a chisel plow, and corn planters.

Massey objected at the confirmation hearing to Debtors' Chapter 13 Plan on the grounds Masey is undersecured and is offered no adequate protection by the plan.

The United States of America represented the ASCS and the SBA at the confirmation hearing.

ASCS filed Proof of Claim No. 14 as a secured creditor on March 3, 1980, for the amount of $2,754.81 principal plus interest ASCS claims a security interest in barley and oats.

USA, on behalf of Commodity Credit Corporation, filed Proof of Claim No. 24 as a secured creditor on June 27, 1980, for the amount of $2,754.81 principal plus interest. Proof of Claim No. 24 incorporates Proof of Claim No. 14.

USA, on behalf of the SBA and ASCS, filed Proof of Claim No. 26 as secured creditors on July 10, 1980, for the amounts of $67,666.61 and $2,754.81 principal plus interest.

Finally, the SBA in connection with Livestock State Bank, filed Proof of Claim No. 28 as a secured creditor on July 11, 1980, for the amount of $67,666.61 principal plus interest.

Prior to the confirmation hearing, the USA filed written objections to Debtors' Chapter 13 Plan on behalf of the ASCS and the SBA. Those objections are: (1) the Chapter 13 Plan does not represent the best interests of the USA since the loans made to Debtors matured June 30, 1979. Under Debtors' Plan payment will be over a five year period; (2) a bankruptcy court does not have the authority to allow the Debtors to use and sell crops in which the USA has a security interest; and (3) the SBA's security is undervalued in Debtors' schedules and plan.

## ISSUES

Counsel presented the following issues to the Court: (1) whether a farmer qualifies as an individual with regular income; (2) whether Debtors will be able to make the payments required by the Chapter 13 Plan; (3) whether secured creditors who failed to file proof of claims by the close of the first meeting of creditors are entitled to object to the confirmation of the plan or to participate in the Chapter 13 Plan; (4) whether Chapter 13 debtors are entitled to make payments to creditors outside the plan; and (5) whether payments made to creditors outside the plan are subject to the Trustee's maximum fee of ten per cent (10%) for his statutory commission and expenses of administration.

(1) *Individual With Regular Income*

The first issue presented to the Court is whether a farmer qualifies as an individual with regular income.

11 U.S.C. Section 109(e) provides in part that:

"Only an individual with regular income ... may be a debtor under chapter 13 of this title."

11 U.S.C. Section 101(24), which defines individual with regular income, provides that:

" "individual with regular income" means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stock broker or a commodity broker;".

Congress intended the Bankruptcy Courts to interpret 11 U.S.C. Section 109(e) and 11 U.S.C. Section 101(24) broadly. Further, Congress specifically intended to allow farmers to qualify for filing under Chapter 13. The House Judiciary Committee in House Report No. 95–595, 95th Cong., 1st Sess., (1977) at page 119, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6080, while discussing Chapter 13 eligibility requirements, stated:

"The present limitation in chapter XIII that permits only wage earners to use chapter XIII is eliminated. Many self-employed individuals, from the house painter and Maine wormdigger, to the barber or independent carpenter, will be permitted to use chapter 13. Even individuals whose primary income is from investments, pensions, social security, or welfare may use chapter 13 if their income is sufficiently stable and regular. This expansion of eligibility will enable many to work out arrangements with their creditors rather than seeking straight bankruptcy liquidation. Under current law, they are constrained to use chapter XI, Arrangements, which is too cumbersome a procedure for the small, self-employed businessman."

Further on the House Judiciary Committee commented that:

"While reducing the limits would keep some enterprises that should be in chapter 11 out of chapter 13, it would have the undesirable effect of automatically freezing out many businesses for which chapter 13 relief is appropriate. For example, a small farmer may easily have secured debts approaching $500,000 due to the mortgage on the farm, while other businesses with that much secured debt would not be considered small. The benefits to be gained by providing an alternative remedy to chapter 11 for small sole proprietors outweighs any countervailing abuse from admitting larger sole proprietors, in light of the possibility of conversion to chapter 11."

Eventually, 11 U.S.C. Section 109(e) set the limit at $100,000.00 in unsecured debts and $350,000.00 in secured debts.

Certainly, Congress knew that farming is a speculative business. A farmer's annual income can vary substantially due to the farmer's dependence upon the weather, crop production, prices, etc. Due to the nature of his business, a farmer cannot readily ascertain, with any degree of certainty, what his future income for the coming years will be.

This Bankruptcy Court holds that a farmer qualifies as an individual with regular income where the farmer has annual income from the farming business even though the future annual income is not readily ascertainable with any degree of certainty.

### (2) *Feasibility*

■ Whether Debtors will be able to make the payments required by the Chapter 13 Plan.

One of the requirements imposed by 11 U.S.C. Section 1325(a) that the Bankruptcy Court must find before it can confirm Debtors' Chapter 13 Plan is:

"(6) the debtor will be able to make all payments under the plan and to comply with the plan."

Debtors are obligated under this Chapter 13 Plan to pay creditors and the Trustee at least $6,500.00 annually, with the possibility of that figure being substantially higher. The Trustee is concerned that due to the speculative nature of farming, that Debtors' annual income will be insufficient to make the required payments.

At the confirmation hearing Lawrence Hines, Debtor, testified that bad weather and the grain embargo caused their present financial condition. Debtor seemed confident that with good weather, fair crop prices, and a market for his crops, that Debtors would make a sufficient profit to meet the payments required by the plan. That appears reasonable to the Court as being subject only to the providence of the Almighty.

The basic philosophy running throughout the bankruptcy code is that a debtor should have at least one chance for rehabilitation. Based on the amount of land Debtors farm and the amount of custom farming available for them to do, it appears that Debtors could potentially produce sufficient income to make the payments required by the plan, even if the payments are substantially higher.

In accord with the philosophy of the bankruptcy code that debtors are entitled to at least one chance for rehabilitation, this

Bankruptcy Court holds that Debtors will be able to make the payments called for by their Chapter 13 Plan, assuming good weather, fair crop prices, and a market for Debtors' crops.

### (3) *Filing of Proof of Claims*

■ The third issue presented to the Court is whether secured creditors who failed to file proof of claims by the close of the first meeting of creditors are entitled to object to the confirmation of the plan or to participate in the Chapter 13 Plan.

At the confirmation hearing Debtors' Counsel argued that Massey and the United States of America on behalf of the SBA and ASCS, had no standing to object to the Chapter 13 Plan or to participate under the Plan for failure to have timely filed their proof of claims. As set out earlier, Massey, the SBA, the ASCS, and the United States of America on behalf of the SBA and ASCS, filed their proof of claims after the close of the first meeting of creditors on February 6, 1980.

Debtors' Counsel relies on Bankruptcy Rule 13–302(e), which reads as follows:

"(1) Secured Claims. A secured claim, whether or not listed in the Chapter XIII Statement, must be filed before the conclusion of the first meeting of creditors in the Chapter XIII case unless the court, on application before the expiration of that time and for cause shown, shall grant a reasonable, fixed extension of time. Any claim not properly filed by the creditor within such time shall not be treated as a secured claim for purposes of voting and distribution in the Chapter XIII case. Notwithstanding the foregoing, the court may permit the later filing of a secured claim for the purpose of distribution by the debtor, the trustee, or a codebtor."

Further, Bankruptcy Rule 13–302(a) requires that, in order for a claim to be allowed, every creditor, including the United States, must file a proof of claim in accordance with Rule 13–302.

Under 405(d) of Pub.L. 95–598 (1978), the Bankruptcy Rules in effect on September 30, 1979, remain in effect, until repealed or superseded, to the extent not inconsistent with the amendments made by the Act. The House Judiciary Committee in H.R. Rep.No.595, 95th Cong., 1st Sess. 351 (1977), U.S.Code Cong. & Admin.News 1978, p. 6307, commented that:

"The Rules of Bankruptcy Procedure will set the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed. The Rules governing time limits for filing proofs of claims will continue to apply under section 405(d) of the bill."

3 Collier on Bankruptcy, 15th ed. (1980), Section 501.02 at page 501–41 suggests that:

"As the filing of a claim is necessary for purposes of distribution of the assets of the debtor in a Chapter 7 liquidation case, it would seem from the casting of Chapter 13, that the same rule would be applicable. Accordingly, Rule 13–302(e) may retain its vitality until such time as it is either re–promulgated or changed by the Supreme Court."

This Court holds that Bankruptcy Rule 13–302(e) is not inconsistent with the Bankruptcy Reform Act of 1978 and is applicable to this case. The purpose for which Bankruptcy Rule 13–302(e) was promulgated is still relevant under the new Chapter 13 law. The Advisory Committee for rules, established by the Chief Justice of the United States, in discussing the purpose of Bankruptcy Rule 13–302(e)(1), commented that:

"Paragraph (1) of subdivision (e) requires generally that secured claims be filed on or before the first date set for the first creditors' meeting in the Chapter XIII case. Since the plan must be submitted to and accepted by creditors before it can be confirmed, an early determination of secured claims is essential to confirmation and the beginning of distribution to creditors under the plan. If for cause shown a secured creditor is unable to file by the time specified, the court may grant a reasonable, fixed extension of time. Any secured creditor who does not file his claim within the time specified, or as extended, will be treated thereafter as an

unsecured creditor for purposes of voting and distribution in the Chapter XIII case."

This Court holds that Massey–Ferguson Credit Corporation, the SBA, and the ASCS, by failing to file their proof of claims before the close of the first meeting of creditors, as required by BR 13–302(e), lost any right they may have had to object to Debtors' Chapter 13 Plan.

This Court further holds that it will exercise its equity powers, and as permitted by BR 13–302(e), allow the secured creditors' proof of claims for the purpose of allowing them to participate in Debtors' Chapter 13 Plan as secured creditors. This Court is aware that the Clerk's notice sent to secured creditors may have misled the creditors as to what period of time they had to file their proof of claims. However, that does not excuse their neglect in not knowing the law and taking the necessary steps to protect their secured status.

### (4) *Payments Outside Plan*

■ The fourth issue presented to the Court is whether Chapter 13 debtors are entitled to make payments to creditors outside the plan.

The Trustee did not recommend confirmation of Debtors' Chapter 13 Plan. He objected to the Debtors paying at least $5,500.00 annually, with that figure probably much higher, to creditors outside the plan. In the Trustee's opinion, the payment to creditors outside the plan makes it tougher to supervise Debtors' Chapter 13 Plan.

11 U.S.C. Section 1326(b) provides that:
"(b) Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."

The House Judiciary Committee, in H.R. Rep.No.95–595, 95th Cong., 1st Sess. (1977) at page 430, U.S.Code Cong. & Admin.News 1978, p. 6386 commented that 11 U.S.C. Section 1326(b) "designates the trustee as the disbursing agent, unless the plan or the order confirming the plan provides otherwise."

The Court adopts the holding by the Honorable David L. Crawford, Bankruptcy Judge, in *In the Matter of Paul Charles Centineo and Marjorie Isabel Centineo, Debtors,* 4 B.R. 654, 6 BCD 445 (Neb.1980). There the Court held that, under 11 U.S.C. Section 1326(b).

"Congress left open to the debtor the option to make payments to the trustee for distribution to creditors or to make payments directly to creditors."

This Court holds that Debtors are entitled to pay creditors outside the plan.

### (5) *Trustee's Fee*

■ The final issue presented to the Court is whether payments made to creditors outside the plan are subject to the Trustee's maximum fee of ten per cent (10%) for his statutory commission and expenses of administration.

11 U.S.C. Section 1302(e)(1)(B), which sets the maximum fee the Trustee can charge, provides:

"A court that has appointed an individual under subsection (d) of this section to serve as standing trustee in cases under this chapter shall fix–(B) a percentage fee, not to exceed ten percent, based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee."

Debtors' Chapter 13 Plan contemplates that the Trustee's ten per cent (10%) fee will be based only upon payments made directly to the Trustee and not upon the substantial payments made to creditors outside the plan.

Trustee presented two arguments to the Court as to why payments made outside the plan should be subject to the Trustee's ten per cent (10%) fee. *First,* the Trustee should be properly funded to perform the duties the Bankruptcy Code requires a Chapter 13 Trustee to perform. *Second,* should the Court rule that payments made outside the plan are not subject to Trustee's fee, it will establish a precedent that intelligent counsel will soon follow to avoid paying the Trustee. The result will be to un-

dermine the Chapter 13 Trustee system established by Congress since no capable Trustee is going to perform work without adequate compensation.

This Bankruptcy Court holds that payments made by a Chapter 13 debtor to creditors outside the plan are subject, with exceptions, to the Trustee's ten per cent (10%) fee.

This court not only agrees with the arguments presented by the Trustee, but finds that 11 U.S.C. Section 1326 contemplates that the Trustee is entitled to charge his ten per cent (10%) fee on all payments made under the plan, regardless of whether he serves as the disbursing agent. 5 Collier on Bankruptcy, 15th ed. (1980), Section 1326.01(3) at page 1326–5, while discussing the situation where the trustee does not serve as the disbursing agent, comments that:

"Where the chapter 13 trustee does not serve as the disbursing agent under the chapter 13 plan, the court may wish to make an appropriate adjustment of the compensation to be allowed the trustee. Absent such an adjustment, the standing trustee percentage fee assessable against a chapter 13 estate, for which the debtor or some entity other than the chapter 13 trustee is designated to serve as disbursing agent, would be the same as if the chapter 13 trustee were to serve as the disbursing agent. Of course, it should be remembered that the various other duties of a chapter 13 trustee in a case commenced by a debtor engaged in business may be more onerous and time consuming than in a case commenced by a debtor not engaged in business."

Further, the Court agrees with the holding reached in *Centineo* that:

"While it is true that 'under' the plan, the debtor may make payments either to the trustee or directly to creditors, the language of this statutory provision provides for a fee to be paid to the standing trustee in either case. The result is that whichever method of payment to creditors is chosen, the trustee will receive his percentage fee." 4 B.R. 654, 6 BCD 445.

A Chapter 13 trustee is entitled to receive a ten per cent (10%) fee, with exceptions, based upon all the payments made by a debtor to the trustee and to creditors outside the plan. However, nothing prevents counsel from negotiating with the trustee to accept a lower percentage fee. Where a trustee's workload is reduced because of the nature of the plan, the trustee may be agreeable to accepting a lower percentage fee. The Court urges both counsel and the Chapter 13 trustee to attempt to reach some agreement where in fact the trustee's workload has been considerably reduced. The Court would point out that it does have the authority to make an appropriate adjustment in the trustee's percentage fee.

This Court holds that, with the exception of any payments made by Debtors to creditors holding a first real estate mortgage on Debtors' homestead property, the Trustee is entitled to base his ten per cent (10%) fee upon all the payments made by Debtors to creditors outside the plan and to the Trustee.

This Bankruptcy Court holds that payments made outside the plan to a creditor holding a mortgage on a debtor's homestead property are not subject to the trustee's ten per cent (10%).

There are valid reasons for a debtor to continue making payments directly to creditors holding mortgages on a debtor's homestead property. Long after the Chapter 13 Plan has expired a debtor is usually still making payments on the mortgage. The code contemplates that such an event will occur. It would be ridiculous to have debtors subject the mortgage payments to the trustee for the term of the plan and then have to go through the process of picking the payments up again.

Further, a creditor holding a mortgage is usually quite capable of looking after its own interests. It is the experience of this Court that if a debtor defaults on a mortgage, the creditor is usually ready and capable of taking care of himself.

The effect of the debtor paying the creditor holding a mortgage on the homestead is

to relieve the trustee from any actual responsibility for making sure the debt is paid. This Court will not permit the Trustee to reap a windfall where he does no work. Here, if the Court makes the mortgage payments subject to the Trustee, it would result in the Trustee receiving $1,000.00 in return for very little work. Such a payment could be responsible for the Debtors' Chapter 13 Plan failing.

## CONCLUSION

Debtors, as farmers, qualify as individuals with regular income. Further, Debtors are capable of making the payments required by their proposed Chapter 13 Plan.

The failure of the SBA, ASCS, and Massey–Ferguson Credit Corporation to file their proof of claims, as required by BR 13–302(e)(1), by the close of the first meeting of creditors prevents them from objecting to the plan. However, the Court will permit them to participate in the plan as secured creditors.

Debtors are entitled to make payments to creditors outside the plan. However, those payments, with the exception of the payment by Debtors to creditors holding a mortgage on Debtors' homestead, are subject to the Trustee's ten per cent (10%) fee.

Debtors shall modify their plan to reflect the rulings made in this decision. Upon doing so, the Court will enter an Order of Confirmation finding that Debtors have complied with all the requirements imposed by 11 U.S.C. Section 1325.

This decision shall constitute Findings of Fact and Conclusions of Law.