**In re John W. HAMPTON, Lynn W. Hampton, Debtors.**

**Bankruptcy No. 387–00197–H12.**

United States Bankruptcy Court, D. Oregon.

March 5, 1987.

Robert N. Ehmann, Pendleton, Or., for debtors.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Chief Judge.

On March 5, 1987, the court entered an order denying confirmation of the debtors' plan for the reason that the debtors do not qualify for relief under Chapter 12 of Title 11, U.S.C. This memorandum opinion will set forth the reasons for the order denying confirmation.

At the confirmation hearing, various objections were raised by the Oregon Department of Veterans Affairs (ODVA), a creditor holding a secured claim. Among these objections was an objection that the debtors were not qualified for relief under Chapter 12. The court stated that it would first determine this issue before proceeding to the other objections to the plan.

At the confirmation hearing it was represented to the court by the debtors that at one time the debtors owned farm land some 18 miles east of Pendleton and leased other farm land some 13 miles north and west of Pendleton. Some years prior to the filing of this case the debtors formed a corporation of which they are the sole stockholders. They then transferred the lease for the leased land to the corporation. Thereafter all of the farm work upon the leased land was performed by the debtors (with equipment owned by the debtors) under a custom farming agreement with the corporation, pursuant to which the debtors were reimbursed by the corporation for seed and other necessary farm supplies. In addition, the debtors were to be paid on a schedule of fixed charges for the various services necessary to raise crops upon the leased land such as tilling, seeding, fertilizing, pest control and harvesting. These operations were to be performed in a husbandman like fashion. The corporation did not hire any employees but left the necessary farming chores to be performed by the debtors under the custom contract. The crops raised were owned by the corporation. The debtors did not perform custom work for any other person.

The debtors also have income from an apartment owned by them. Mr. Hampton receives income as trustee of a trust. Mrs. Hampton receives a salary as an assistant district attorney. The debtors recognize that if the income derived from the custom contract is not income from a farming operation, as that term is used in 11 U.S.C. § 101(17), they would not meet the requirement that more than 50% of their income for the preceding taxable year was received from a farming operation.

The court believes that the income received from the custom contract is not income from a farming operation.

ODVA has cited two cases to the court: *In re Dakota Lay'd Eggs*, 57 B.R. 648 (Bkrtcy D.N.D.1986) and *Armstrong v.*

*Corn Belt Bank,* 55 B.R. 755 (D.C.C.D.Ill. 1985). The debtors have cited three cases: *In re Lindsay,* 29 B.R. 25 (Bkrtcy.D.Or. 1983); *In re La Fond,* 791 F.2d 623 (8th Cir.1986); and *In re Myers,* 56 B.R. 423, (Bkrtcy.S.D.Iowa 1985). All of these cases were decided prior to the enactment, in 1986, of Chapter 12. They are cited by the parties as analogous to the issue here involved.

In the *Armstrong* case the bank had filed an involuntary petition in bankruptcy against Armstrong who defended upon the ground that he was a farmer. The statute in question defined a farmer as a person who receives more than 80% of his income from a farming operation "owned or operated by such person." Part of the income which *Armstrong* contended should be considered farm income was cash rental received "up front" for rent of farm property. The court held that this rental could not be considered farm income stating that mere ownership without risk is not enough. While "a person need not personally till the soil to be a farmer, his income, however, must have some connection with the inherently speculative nature of farm income." *Armstrong,* 55 B.R. at 761. The court quoted with approval from *In re Hines,* 7 B.R. 415 at 418 (Bkrtcy.D.S.D.1980), the following:

> Certainly, Congress knew that farming is a speculative business. A farmer's annual income can vary substantially due to the farmer's dependence upon the weather, crop production, prices, etc. Due to the nature of his business, a farmer cannot readily ascertain, with any degree of certainty, what his future income for the coming years will be.

In the instant case none of these uncertainties faced the debtors. While the income might vary somewhat depending upon the number of operations to be performed and that the amount of hauling to be done during harvest would depend upon the yield, the amount to be received depended entirely upon the amount of work performed rather than the risks faced by the corporation of weather, crop production, prices, etc.

In *Dakota Lay'd Eggs* the court held income derived from chicken flocks owned and maintained in facilities operated by the owner, but managed by others, and income derived from sale of hens and eggs was income from a "farming operation" but income from eggs obtained through contracts with independent producers who owned hens from the sale of such eggs was not income from a farming operation. Thus, income from a farming operation does not include all income from a business operation in which farming is accomplished but is limited to that income which is received from the operation itself.

The cases cited by the debtors all concern questions of whether the debtor could claim farm equipment exempt under a claim that it constituted a tool of the trade. *Lindsay* did not involve a debtor who claimed to be a farmer and the holding has no relevance to the issues in this case. The *La Fond* case is not of assistance. The court there held that, for the purpose of claiming exemption in farm equipment, the definition of a farmer contained in § 101(17) should not be used. In the *Myers* case the court assumed, without discussion, that a person furnishing farm services on a custom basis to others, is engaged in a farming operation.

While *Myers* could be considered some precedent favorable to the argument of the debtors, this court believes that the reasoning of the *Armstrong* case is more persuasive.

The court does not believe that it would be seriously argued that every salaried employee of a person engaged in farming is also engaged in a "farming operation". The court also does not believe that a person furnishing services to assist in the raising of a crop belonging to another is engaged in a farming operation merely because that person has a contract to furnish such services on a piece work basis. Nor should it make a difference whether such services are contracted with the owner or lessee of a single farm or with several such owners or lessees. It should not make a difference whether the person furnishing the services does so for only one necessary

element or all of the necessary elements necessary to raise and harvest a crop. In these examples, the major inherent risks of farming are not borne by the person furnishing such services but rather by the person for whom the services are performed.

The court therefore finds that the income derived from the custom contract was not income from a farming operation. Adding the income from the custom contract to the debtors' other non-farm income exceeds 50% of the debtors' total income for the tax year preceding the filing of this case. The debtors are therefore not qualified for relief under Chapter 12.