In re Mark A. MASCHHOFF and Patricia E. Maschhoff, Debtor(s).

Bankruptcy No. BK 87-31176.

United States Bankruptcy Court, S.D. Illinois.

Aug. 23, 1988.

Donald Samson, Belleville, Ill., for Old Nat. Bank of Centralia.

Robert T. Bruegge, Breese, Ill., for debtors.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

Debtors, Mark and Patricia Maschhoff, received a total of $64,314.00 from the sale of farm products and from agricultural program payments in 1987, the year prior to the filing of their Chapter 12 bankruptcy petition. In addition, debtors received non-farm income of $53,479.00 from wages and salaries, interest income, tax refunds and capital gains in 1987. At issue is income of $19,735.00 received by debtors from the rental of farm houses located on debtors' land. Debtors contend that this rental income constitutes income from a farming operation for purposes of determining their eligibility for relief under Chapter 12 of the Bankruptcy Code (see 11 U.S.C. § 109(f)).

Old National Bank of Centralia (Bank), a creditor in debtors' bankruptcy proceeding, has filed a motion to dismiss debtors' bankruptcy petition on the basis that the rental income from farm houses located on debtors' property constitutes non-farm income which, when added to debtors' other non-farm income, exceeds the 50 percent income limitation on non-farm income for persons seeking relief as "family farmers" under Chapter 12. The definition of "family farmer" contained in § 101(17) of the Code (11 U.S.C. § 101(17)) refers to individuals that "receive from [a] farming operation more than 50 percent of [their] gross income for the taxable year preceding [the year in which the Chapter 12 case] was filed[.]" Section 101(20) provides:

> "farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state[.]

While § 101(20) manifestly does not include the rental of farm houses in its listing of activities that constitute a "farming operation," debtors contend that rental of the farm houses here is an integral part of debtors' general farming operation and that it, therefore, comes within the broad references to "farming" in § 101(20). Debtors assert that the tenants of the three houses in question perform an important function of watching over farm buildings and grain stored on the farmsteads and of assisting with the handling of farm implements during the farming season.

This assertion is supported by an affidavit of one of the tenants stating that he performs such functions as a condition of his continued tenancy. Debtors observe further that failure to rent out the farm houses would result in the immediate dilapidation of the houses and that they would thus constitute a liability for the farming estate rather than a source of income. Since rental of the farm houses benefits debtors' farming operation by providing income and help on an as needed basis, debtors characterize this activity as "necessary to perpetuate" the farming operation referred in § 101(20) and assert, accordingly, that such rental income should be treated as farm income for purposes of § 101(17).

Debtors argument is phrased in the language of *Matter of Armstrong,* 812 F.2d 1024 (7th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 287, 98 L.Ed.2d 248 (1987), in which the court found that the debtor's sale of farm machinery in an effort to scale down his farming operation came within the general term of "farming," because this term includes activities regarding

> the means (or in this case the equipment) necessary to perpetuate the farming operation the definition [section 101(20)] speaks of.

*Id.* at 1026. The *Armstrong* court reasoned that the farm machinery in question had been purchased to work the acreage which represented the debtor's farming operation and that, without the equipment, there would be no farm. It would be illogical, the court stated, "to say that the implements which are necessary to perpetuate the enterprise are not part of the enterprise...." *Id.* at 1027. The court concluded that since the equipment was a necessity for the farming operation, not a detached investment distinct from the farm, and was inescapably interwoven with his farming operation, it was a part of the debtor's "farming" and was included within the definition of "farming operation."

As indicated by debtors, *Armstrong* is the leading case on the issue of what constitutes a "farming operation," and, while it was decided under § 303(a) in the context of an involuntary proceeding against a farmer, it may be relied upon in determining whether a debtor is a family farmer under Chapter 12 of the Bankruptcy Code. *In re Seabloom,* 78 B.R. 543 (Bankr.C.D.Ill. 1987); *In re McKillips,* 72 B.R. 565 (Bankr. N.D.Ill.1987). The court in *Armstrong* was asked to decide whether income from two separate and distinct sources was farm income. The first source of income, already referred to by debtors, was the sale of farm machinery. The second source of income was the renting of farm land by which the debtor received rent payments "in cash and up front." *Armstrong,* 812 F.2d at 1027. The court, while concluding that income from the sale of farm machinery was farm income because the sale involved equipment necessary to perpetuate the debtor's farming operation, held that the cash renting of farm land was not part of the debtor's farming venture because the debtor, by receiving cash payments up front regardless of the success of crops planted on the land, was not exposed to the inherent risks of farming. The court observed that the debtor's rental arrangement served to remove the risks that would traditionally be associated with farming and stated that the debtor was involved with the land in a landlord-tenant relationship rather than as a participant in the farming operation.

While debtors seek to analogize the income from the sale of farm machinery in *Armstrong* to the rental income from farm houses in the instant case, the Court finds no basis for this comparison. The farm houses here, unlike the farm machinery in *Armstrong,* are necessary to debtors' farming operation only in the sense that the renting of the houses subsidizes debtors' farming operation by providing income and services that would have to be obtained elsewhere if the houses were not rented. It cannot be said, to paraphrase *Armstrong,* that without the houses there would be no farm or that the houses are necessary to work the farm. It may be that debtors would have to find someone else to watch over the farm buildings and grain stored on the farmsteads, but this factor does not make rental income from the tenants who now perform that service farm income. Likewise, the fact that the farm houses, if unoccupied, would consti-

tute a liability to debtors does not make rental of the farm houses a farming activity. Rather, the rental of these houses is like that of any other residential leasing arrangement regardless of the location of the houses on debtors' farm land.

Applying the risk analysis of *Armstrong*, it appears that debtors' rental of the farm houses is more similar to the cash renting of farm land discussed in *Armstrong*. By the terms of their leases, debtors receive a monthly rental payment from the farm house tenants regardless of the success or failure of the farming operation. Debtors thus are not exposed to the traditional risks of farming by reason of these farm house tenancies. The tenants' limited participation in debtors' farming operation does not serve to convert the landlord-tenant relationship into a farming activity, as nothing about the tenants' assistance makes the monthly rental payments more or less certain. As in *Armstrong*, the rental income from debtors' farm houses must be considered as non-farm income for purposes of § 101(17), and the Court so finds.

Debtors concede that without inclusion of the farm house rental payments as farm income, they do not meet the 50 percent income requirement of § 101(17) and are not eligible for relief under Chapter 12. Accordingly, debtors' Chapter 12 petition will be dismissed.

IT IS ORDERED that debtors' petition for Chapter 12 relief is DISMISSED.