### In re SUGAR PINE RANCH, Debtor.

**Bankruptcy No. 688–63500–R12.**

United States Bankruptcy Court,
D. Oregon.

April 28, 1989.

Robert S. Quinney, Hershner, Hunter, Moulton, Andrews & Neill, Eugene, Or., for debtor.

Douglas R. Schultz, Cass, Scott, Woods & Smith, Eugene, Or., for creditors, SWO Corp. & Douglas Nat. Bank.

Thomas G. Marks, Beaverton, Or., trustee.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE,
Bankruptcy Consultant.

This matter comes before the court upon a joint motion to dismiss filed on behalf of two creditors, Douglas National Bank and SWO Corporation (creditors).

## BACKGROUND

The debtor filed its petition for relief herein under Chapter 12 of the Bankruptcy Code on November 21, 1988. The debtor's petition indicates that the debtor is a partnership. It discloses that the general partners are David Willis H. and Janet F. Willis, husband and wife.

On January 20, 1989, creditors filed their motion to dismiss this case. The motion contends that the debtor is not a partnership. Accordingly, it does not own the assets scheduled in the bankruptcy petition and it does not owe the debts scheduled in the bankruptcy petition. Further, the motion contends that David H. Willis and Janet F. Willis, as individuals, are not eligible for relief under Chapter 12 of the Bankruptcy Code since less than 50% of their gross income, for the taxable year preceding the year in which the petition was filed, did not arise out of farming operations. In the alternative, creditors contend that the debtor is not eligible for relief under Chapter 12 since less than 80% of its assets consist of assets related to the farming operation and less than 80% of its aggregate non-contingent, liquidated debts arise out of the farming operation.

A hearing on the motion to dismiss was held on February 14, 1989. At the hearing, the parties entered into certain stipulations and the court received further evidence and heard testimony regarding the debtor's operations including the functions performed by David H. Willis and Janet F. Willis.

At the conclusion of the hearing, this court orally announced its findings of fact and conclusions of law that the debtor is and has been, at all material times herein, a valid partnership under Oregon law in which more than 50% of the outstanding equity is held by one family, to wit: David H. Willis and Janet F. Willis, husband and wife. This court further held that the debtor is not a "sham entity", that it owned the assets scheduled in its bankruptcy petition on file herein and, generally, owed the debts that had been scheduled. This court took under advisement the remaining issue, whether more than 80% of the value of the debtor's assets consist of assets related to the farming operation and whether not less than 80% of the debtor's aggregate non-contingent, liquidated debts arise out of the farming operation.

At the February 14, 1989 hearing, David H. Willis testified extensively concerning the operations carried on by the debtor. He testified that the debtor owns two parcels of real property referred to as the "Camas" property consisting of 93.45 acres and the "Reston" property consisting of 575 acres. In the past they have raised sheep, cattle and hay as well as the harvesting of merchantable timber on a sustained yield basis. There is merchantable timber on the Reston property. This parcel is also used for grazing. The debtor currently has 20 head of cattle. Last year the debtor harvested 131 tons of hay from the Camas property which was used to feed the livestock since the 20 head of cattle can exhaust the grazing capacity of the Reston

property when it is frozen or after an extended dry period. Mr. Willis testified that he plans to build the cattle herd to 50 head. After that, the debtor could sell 20 head per year.

Concerning the merchantable timber on the Reston property, Mr. Willis testified that the Willis family harvests merchantable timber themselves with chain saw and tractor, by selective cutting, on a sustained yield basis. In other words, they only cut an amount of merchantable timber that will be replaced by the next year's growth. Their objective is to maintain a perpetual crop. Approximately 137,000 board feet per year is harvested in this manner. The ground is seeded naturally from seed trees. They place hay bales on the timbered portion which allow the cattle to feed among the trees and deposit natural fertilizer. No commercial fertilizer is used. Mr. Willis routinely thins the timber stand by transplanting seedlings and younger trees to soil beds which he has prepared for that purpose. The Willis family also routinely removes branches, brush and weeds, prunes the trees and otherwise manicures the stand.

Mr. Willis further testified that in 1986, the debtor refinanced its operations with creditor, Douglas National Bank. They had hoped to be able to meet the annual debt payments required by the loan with the proceeds from the annual timber harvest. In addition, the debtor also uses some of the timber for firewood and for other purposes on the property. David and Janet Willis reside on the Reston property.

The parties have stipulated that if the management of the merchantable timber on a sustained yield basis, such as testified to by Mr. Willis, is considered to be related to the farming operation or a farming operation itself, then the debtor satisfies the remaining test for eligibility set forth above. Conversely, if this court finds that the management of the merchantable timber, on a sustained yield basis, is not a farming operation or if it doesn't relate to the farming operation, then the debtor is not eligible for relief under Chapter 12 of the Bankruptcy Code for the reason that 80% of the value of its assets will not consist of assets related to the farming operation and at least 80% of its aggregate, non-contingent, liquidated debts will not arise out of the farming operation of the debtor.

The court has given the debtor an extension of time in which to file a Chapter 12 plan, herein, until 30 days following the ruling on the creditors' motion to dismiss.

Creditors argue that the debtor's operations of harvesting timber on a sustained yield basis amount to a logging operation rather than a farming operation. At the February 14, 1989 hearing, the court extended an opportunity to the parties to submit post-hearing briefs on the remaining issue. These briefs have now been submitted.

## ISSUE

Is the debtor's harvesting of merchantable timber on a sustained yield basis a "farming operation" or related to the debtor's farming operation for purposes of Chapter 12 of the Bankruptcy Code?

## DISCUSSION

All statutory references are to the Bankruptcy Code, Title 11 U.S.C. unless otherwise indicated.

This court has not found and neither party has cited any case directly on point dealing with the harvesting of merchantable timber on a sustained yield basis. Accordingly, this appears to be a case of first impression.

"Only a family farmer ... may be a debtor under Chapter 12 of this Title." § 109(f).

Section 101(17) provides in pertinent part: (17) "family farmer" means ...

(B) corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, and such family or such relatives conduct the farming operation, and

(i) more than 80 percent of the value of its assets consists of assets related to the farming operation;

(ii) ... not less than 80 percent of its aggregate noncontingent, liquidated debts ... on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; ...

Section 101(20) states that:

(20) "farming operation" includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state;

In interpreting the term "farming operation", courts have generally applied a broad or liberal construction. *In re Maike,* 77 B.R. 832 (Bankr.D.Kan.1987), *In re Blanton Smith Corporation,* 7 B.R. 410 (Bankr.M.D.Tenn.1980).

... the court will not confine itself to a natural or traditional, or even a dictionary definition of "farming operation". There may be other businesses which do not seem to fall within what is traditionally thought of as farming, ... but which very well may qualify for Chapter 12.

*In re McKillips,* 72 B.R. 565, 568 (Bankr.N. D.Ill.1987).

Courts should look to the totality of the circumstances involved in the debtor's operation keeping in mind the remedial purposes behind Chapter 12. *In re Mikkelson Farms, Inc.,* 74 B.R. 280 (Bankr.D.Or. 1987).

Some of the factors that courts have found important are:

1. Whether the location of the operation would be considered a traditional farm, *In re Maike, supra;*

2. The nature of the enterprise at the location, *In re Maike, supra;*

3. The type of product and its eventual market, although the "... court should not be limited to products and produce which are traditionally associated with farming in the state of the court's location ..." Debtors "... should not be denied the protection of the Bankruptcy Code merely because their endeavors are not found in the laundry list of Old McDonald's Farm." *In re Maike,* 77 B.R. at 839;

4. The physical presence or absence of family members on the farm, *In re Mikkelson, supra;*

5. Ownership of traditional farm assets, *In re Mikkelson, supra;*

6. Whether the debtor is involved in the process of growing or developing crops or livestock, *In re Maike, supra.;* and

7. Perhaps the key factor is whether or not the practice or operation is subject to the inherent risks of farming. *In re Hampton,* 100 B.R. 535 (Bankr.D.Or.1987) (Hess, J.).

Based upon the criteria set forth above, the debtor maintains that its operations constitute a "farming operation". Creditors contend that the debtor's harvesting of merchantable timber on a sustained yield basis should be considered a commercial logging operation rather than a farming operation. Although they concede that the term "farming operation" should be broadly construed, they maintain that this court should not include an operation which they maintain is clearly outside the nature or practice normally associated with farming. In support of their position, creditors have cited a number of cases where the courts have found that certain operations or practices did not constitute a farming operation, as follows:

*In re McNeal,* 848 F2d 170 (11th Cir. 1988) (Debtor's operation of a chicken coop cleaning service and sale of manure for fertilizer did not constitute a "farming operation"); *In re Watford,* 92 BR 557 (Bankr.M.D.Ga.1988) (Business of catching and selling stone crabs and business involving storage of soybeans while awaiting sale did not constitute "farming operations"); *In re Maschhoff,* 89 BR 768 (Bankr.S.D.Ill.1988) (Income derived from rental of farm houses located on debtor's land did not constitute "income from farming operations"); *Matter of Armstrong,* 812 F2d 1024 (7th Cir.1987) (Merely leasing farm land to

others does not constitute farming); *In re McKillips*, 72 BR 565 (Bankr.N.D.Ill. 1987) (Boarding, raising, training and showing horses owned by others does not constitute farming operations) and *In re Dakota Lay'd Eggs*, 57 BR 648 (Bankr.D.ND.1986) (Income derived from sales of eggs purchased from independent farmers was not income of a "farming operation").

Memorandum by SWO Corporation and Douglas National Bank in Support of their Motion to Dismiss filed February 28, 1989, pp. 6 & 7.

Creditors further contend that the debtor's operation of harvesting merchantable timber on a sustained yield basis is not subject to the normal risks inherent in farming. They rely on the fact that timber is more durable than other crops. In addition, the creditors argue that, unlike a traditional farmer, the debtor need not harvest and market its crop each year. Creditors contend that the debtor may refrain from cutting timber in years where the market for raw timber and/or lumber is depressed.

In *In re Hampton, supra.*, Judge Hess found that custom farming for a fee does not constitute a "farming operation". He reasoned that custom farming is not subject to the normal risks inherent in farming because these risks are not borne by the person furnishing the services. They are borne by the person for whom the services are performed.

> Certainly, Congress knew that farming is a speculative business. A farmer's annual income can vary substantially due to the farmer's dependence upon the weather, crop production, prices, etc. Due to the nature of his business, a farmer cannot readily ascertain, with any degree of certainty, what his future income for the coming years will be.

*In re Hampton*, 100 B.R. at 536 quoting with approval from *In re Hines*, 7 B.R. 415 at 418 (Bankr.D.S.D.1980). Judge Hess conceded that the income of a "custom farmer" performing farming services for others might vary depending upon the number of opera-tions to be performed, the amount of hauling to be done, etc. He concluded, however, that the fee to be received would depend entirely upon the amount of work performed rather than on the risks faced by weather, crop production, market prices, etc., the inherent risks of farming.

Here, Mr. and Mrs. Willis are actively involved in the process of growing and developing their product. They work the soil by clearing brush and weeds and by preparing beds for transplant. Although the ground is seeded naturally, the Willis family transplants new seedlings to the prepared beds. Fertilizer is provided by debtor's cattle after strategic placement of feed on the timbered land. Furthermore, the Willis family prunes the stand to encourage maximum growth. When mature, they harvest the trees themselves on a sustained yield basis. This practice provides an annual harvest much akin to a traditional annual crop, in contrast to most commercial logging operations which may simply cut all the merchantable timber in a stand at one time.

Finally, debtor's "crop" is exposed to many of farming's inherent risks. A fire might destroy not only this year's "crop" but future years' harvests as well. In addition, although creditors contend that the debtor need not harvest merchantable timber annually, the uncontroverted testimony of David H. Willis was that the debtor hoped that its annual timber harvest would service the debt owing to Douglas National Bank. Indeed, the debtor lacked sufficient funds from other sources to make the debt payment. In other words, like the traditional farmer, the debtor is dependent upon its annual harvest to pay its debts.

David H. Willis also testified that he hoped the debtor could increase its cattle herd to 50 head so that a greater portion of income could be received from cattle sales and that the debtor had, in the past, raised sheep as well. David and Janet Willis reside on the Reston property, therefore, they are physically present on the farm. They own some traditional farm assets including livestock, a tractor, etc. The debtor's operations are situated in a rural loca-

tion on what could very well be considered a traditional farm.

The cases relied upon by the creditors where the courts have found certain practices or operations not to be a farming operation are not analogous to this case. In *In re McKillips, supra,* for example, the court concluded that:

> Raising a colt which belongs to another is not farming if the measure of compensation is a fee rather than a share of the profits at a future sale. In this situation, the Debtors' profit is not at the mercy of the weather or the farm economy. Their profits may be affected, but the effect is indirect. The risks normally attendant with a farming operation, including the contemporary phenomenon of falling land values, are just not present here. The same analysis may be applied to the training, showing, and other aspects of the Debtors' business. The Debtors are, for a fee, providing a service, not producing a farm product. Most of what the Debtors do just does not conform to what Congress deemed needed special protection. 72 B.R. at 568, 569.

The *McKillips* court, as well as the courts in the other cases cited by creditors, apparently adopt the same rationale as Judge Hess in *In re Hampton, supra,* that the performance of a service for a fee is not normally a "farming operation". Here, the debtor is not performing a service for a fee.

In the alternative, the creditors urge this court to consider definitions given to "farming operations" and such similar terms as "agriculture", "agricultural or horticultural commodities", "agricultural labor", "the business of farming", "farm products", etc. found in other statutory schemes. Creditors argue that the definitions applied to these terms by statutes and/or regulations contained within other statutory schemes, or in judicial interpretations thereof, should be given great weight by this court in concluding that the debtor's operations do not constitute a "farming operation" for the purpose of Chapter 12 of the Bankruptcy Code.

The creditors point to the Fair Labor Standards Act of 1938 and certain regulations adopted pursuant thereto, the Internal Revenue Code employment tax provisions, other definitions found in the Internal Revenue Code dealing with the "business of farming", the definition of farm products in the Uniform Commercial Code, Oregon unemployment insurance statutes, and the Oregon Workers' Compensation law.

Borrowing a statutory or judicial interpretation of a term such as "farming operation" from an unrelated statutory scheme and applying it to the definition of a "farming operation" for purposes of Chapter 12 of the Bankruptcy Code is something that any court should undertake with great hesitation and caution since the underlying legislative objective of the unrelated statutory scheme may be entirely different from the intent of Congress in enacting Chapter 12. Accordingly, while it might be proper to give the term "farming operation" or other similar term a narrow interpretation under one set of statutes, it is appropriate to give the same term a broad interpretation in the context of Chapter 12.

Turning to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et. seq., as stated by the creditors, "The federal Fair Labor Standards Act of 1938, as amended, is a statute of general application which establishes minimum wage, overtime pay, equal pay and child labor requirements. That Act specifically excludes certain types of agricultural employment from its coverage." Memorandum by SWO Corporation and Douglas National Bank in Support of their Motion to Dismiss filed February 28, 1989, p. 11. Clearly, this act is designed to protect workers while excluding certain types of agricultural laborers from its coverage. Accordingly, it is only logical to find that regulations adopted pursuant to the Act provide that:

> Trees grown in forests and the lumber derived therefrom are not 'agricultural or horticultural commodities'. Christmas trees, whether wild or planted, are also not so considered."

28 CFR § 780.115, in part.

> Operations in a forest tree nursery such as seeding new beds and growing and

transplanting forest seedlings are not farming operations. The planting, tending and cutting of Christmas trees do not constitute farming operations."

29 CFR § 780.208, in part.

The obvious import of such regulations is to give the exception of agricultural employment a narrow interpretation since such employees are excluded from the benefits of the Act. Such an objective is in contrast to the Congressional intent behind the enactment of Chapter 12 which, as stated above, was intended to be given a broad interpretation. Thus, the definition of a "farming operation" contained within the regulations adopted pursuant to the Fair Labor Standards Act are not analogous or helpful in this case.

The same rationale applies to the creditors reference to the Oregon unemployment insurance statutes, O.R.S. 657.005 et. seq. and the Oregon Worker's Compensation law, O.R.S. 656.001 et. seq.

Likewise, Internal Revenue Code Section 3121(g) provides an exception to employers who employ "agricultural labor" from responsibility for employment taxes. *See* Memorandum by SWO Corporation and Douglas National Bank in Support of their Motion to Dismiss, filed February 28, 1989 at p. 13. Again, it is consistent with the overall objective of that statute to give the term "agricultural labor" a narrow interpretation.

Creditors emphasize that the Internal Revenue Service has adopted a definition of "the business of farming" for various purposes involving a determination of taxable income (26 CFR § 1.175–3 and 26 CFR § 1.182–2). Suffice it to say that: "Declarations made on income tax returns are not determinative of whether a debtor is a farmer for purposes of Chapter 12." *In re Burke*, 81 B.R. 971, 977 (Bankr.S.D.Iowa 1987); *see also In re Wolline*, 74 B.R. 208 (Bankr.E.D.Wis.1987).

Creditors argue that this court should give weight to the fact that the Uniform Commercial Code definition of "farm products" does not include timber or logs. Here, it is interesting to note that not all of the cases support the creditors' conclusion. *See Gruner v. Hudson Valley Production*

*Credit Assoc., (In re Houts )*, 31 UCC Rep. 338 (N.D.N.Y.1981) where the court indicated that a nursery man engaged in the process of cultivation (in that he tended and cared for trees, shrubs and plants for sale) should be considered a farming operation and that the trees, plants, shrubs and bushes should be considered farm products. *See also Mountain Credit v. Michiana Lumber & Supply, Inc.*, 31 Colo.App. 112, 498 P.2d 967, 10 UCC Rep. 1347 (1972), where the court stated: "One can be a farmer of trees if they are grown from seed and cared for in a nursery setting, …" 498 P.2d at 969, 10 UCC Rep. at 1349. *In accord, Frazier v. Cookeville Production Credit Assoc., (In re Frazier )*, 16 B.R. 674 (Bankr.M.D.Tenn.1981).

In any event, while reference to other statutory schemes may at times be useful, here it is not. Discussing the legislative history of the term "farming operation" in the context of Chapter 12, Judge Higdon (Wilhardt) has stated:

"It is clear from the legislative history that Congress was extremely concerned with the economic plight of families who had lived on the farm and had an established way of life in raising crops and livestock. It had recognized the provisions of Chapter 11 and Chapter 13 simply did not meet the needs of many farmers."

*In re Mikkelson Farms, Inc.*, 74 B.R. at 284, 285. Here, Mr. and Mrs. Willis live on the farm and have an established way of life in raising crops and livestock.

Considering all of the facts and circumstances in this case, this court concludes that the debtor's operations, including the harvesting of merchantable timber on a sustained yield basis, constitutes an integrated farming operation. Accordingly, the debtor is eligible for relief under Chapter 12 of the Bankruptcy Code and the creditors' motion should be denied.

This opinion constitutes the court's findings of fact and conclusions of law; they shall not be separately stated. An order consistent herewith shall be entered.