**In re Burlen R. GLENN, SSN 443–44–2179, Christine F. Glenn, SSN 448–46–0690, Debtors.**

**Bankruptcy No. 94–71142.**

United States Bankruptcy Court, E.D. Oklahoma.

April 25, 1995.

Robert Inglish, Wilburton State Bank, Okmulgee, OK, Matthew A.P. Schumacher, Wilburton State Bank, Muskogee, OK, for creditor.

Thomas B. Webb, McAlester, OK, for debtors.

Robert D. Hemphill, Chapter 12 Trustee, Okmulgee, OK.

## ORDER

TOM R. CORNISH, Bankruptcy Judge.

On the 11th day of April, 1995, the creditor's, Wilburton State Bank, Motion to Dismiss and Motion for Relief from Stay came on for an evidentiary hearing in McAlester, Oklahoma.

After a review of the above-referenced pleadings, hearing testimony presented and arguments of counsel, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr. P., in this core proceeding:

## FINDINGS OF FACT

1. The Debtors filed Chapter 7 on September 14, 1994. The case was converted to Chapter 12 on February 14, 1995. This Court previously determined that the relevant taxable year to determine Chapter 12 eligibility was calendar year 1993.

2. The Debtors' 1993 tax return reflects income as follows:

| | |
|---|---|
| Wages | $ 9,113.00 |
| Interest | $ 853.00 |
| Capital gain | $23,299.00 |

The Debtors' capital gain was from the sale of timber. The Debtors reported a loss on their farm operation in the amount of $16,073.00. The sale of timber consisted of both selling timber off his own property or selling timber from others. Mr. Burlen Glenn testified that he purchased timber contracts from individuals, such as neighbors, and sold them to Weyerhaeuser company ("Weyerhaeuser"). Weyerhaeuser actually cut the timber. Mr. Glenn further testified that he did not cultivate or fertilize the trees. He did testify that he kept fires out of the property and managed the property.

3. Wilburton State Bank ("the Bank") filed its proof of claim in the amount of $195,038.73. As of the date of the hearing, the amount due to the Bank was $204,023.74. The Bank had a security interest in a piece of real property, all cattle and inventory, and the following equipment:

2 Gooseneck Trailers

2 Brushhogs

Ford Tractor

2 Leyland Tractors

Front End Loader

Flatbed Trailer

Hay Mower

New Holland Sperry Rake

Stock Trailer

In December, 1994, the real property was appraised at $125,000.00. At the time of one of the Bank's inspections, the Debtors had 180 head of cattle on the property, having a value of $80,400.00. The last inspection made by the Bank approximately one month ago revealed that there were 193 head of cattle on the Debtors' property. Clay Bennett, President of Wilburton State Bank, testified that he was concerned about the declining value of the cattle. However, Mr. Bennett conceded on cross-examination that the cattle market had improved over the last ten (10) months. Mr. Bennett testified that he believed the Bank's own appraisal was even too high.

4. The Trustee, Robert Hemphill, testified that the cattle were in better condition than most cattle at this time of the year. The Debtor, Mr. Glenn, testified that all of his equipment was operable.

5. The Bank has filed a Motion to Dismiss alleging that the Debtors are ineligible for Chapter 12. Additionally, the Bank seeks relief from the stay or alternatively, the Bank seeks adequate protection payments.

### CONCLUSIONS OF LAW

A. The first issue which needs to be addressed is whether the Debtors are eligible for Chapter 12 relief. Section 109(f) of the Bankruptcy Code provides that "[o]nly a family farmer with a regular annual income may be a debtor under Chapter 12 of this title." Section 101(18)(A) defines a "family farmer" as follows:

individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.

■ B. The definitions of "farmer" and "farming operation," when determining Chapter 12 eligibility, are to be liberally construed. *In re Maike,* 77 B.R. 832, 835 (Bankr.D.Kan.1987) (*citing In re Blanton Smith Corp.,* 7 B.R. 410 (Bankr.M.D.Tenn. 1980)). In *Maike,* the FDIC and Federal Land Bank of Wichita brought a motion to dismiss the bankruptcy because the debtors were not farmers. A majority of their income was derived from the breeding, raising, and sale of puppies. *Id.* at 833. The court in *Maike* framed the issue as "Does the debtors' nontraditional enterprise constitute a farming operation?" *Id.* The court in determining whether the debtors were eligible for Chapter 12 relief noted that "while some of the more traditional farming operations are listed, other activities may be considered farming operations." *Id.* The court found:

[A] location that would be considered a farm under the traditional definition should weigh heavily in the court's decision. The enterprise at the location should next be considered. Functions which are strictly service oriented, and which are merely tangentially related to the breeding, maintaining and marketing of animals or the planting, maintaining and harvesting of crops, even though performed on the farm would not qualify the actor as a farmer.

*Id.* at 839. In *Maike,* the court found that a game farm and a kennel were considered a farming operation. *Id.*

In *In re Sugar Pine Ranch,* 100 B.R. 28 (Bankr.D.Or.1989), the court was faced with the issue of whether the Debtor qualified for Chapter 12. The court listed factors to determine Chapter 12 eligibility from various cases, as follows:

1. whether the location of the operation would be considered a traditional farm;

2. the nature of the enterprise at the location;

3. the type of the product and its eventual market, although the court should not be limited to products which are traditionally associated with farming;

4. the physical presence or absence of family members on the farm;

5. ownership of traditional farm assets;

6. whether the debtor is involved in the process of growing or developing crops or livestock;

7. whether or not the operation is subject to the inherent risks of farming.

*Id.* at 31 (citations omitted).

■ In the instant case, the Debtors have a cow and calf operation. In addition to the cow and calf operation, the Debtors have sold their own timber and brokered the timber of neighbors to Weyerhaeuser. They live in rural Southeastern Oklahoma in a traditional farm setting. The Debtors have traditional farm equipment such as tractors, a bailer, brushhogs, and trailers, as set forth in the

Bank's Motion for Relief from Stay. The Debtors live and work on the farm, although Mrs. Glenn has outside employment. The Debtors' operation is subject to the inherent risks of farming. As in the *Sugar Pine* case, the timber operation is exposed to the risk of fire. A fire could potentially destroy all of the Debtors' timber for more than one year.

The Debtor, Mr. Glenn, testified that he managed the property to protect it from fire and he worked with the forestry department and other agencies. In light of the factors listed above, this Court finds that the timber operation is a farming operation. For these reasons, this Court finds that the money derived from the Debtors' timber operation constituted farm income and therefore, the Debtors qualify for Chapter 12 relief.

■ C. The next issue to be addressed is whether the Bank is entitled to relief from the automatic stay pursuant to § 362(d). Section 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) For cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property ... if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

The 100 acres in which the Bank has a security interest includes the Debtors' home. The Trustee filed an inventory listing the real property, which is mortgaged to the Bank, to be valued at $95,000, livestock at $84,900, and the equipment (less a Dodge Truck which is subject to a lien of Chrysler) in the amount of $19,700. In December, 1994, the real property was valued at $125,-000. In analyzing these figures, it appears to this Court that there is a reasonable likelihood that equity does exist in this property. At the hearing, the testimony reflected that the amount of the debt was equal to the value of the land and the cattle alone. As a result, the Bank is not undersecured.

■ The fact that a debtor lacks equity in the property is not fatal to the protection of the automatic stay. Here, the secured claimant is adequately protected; the debtor has made progress in formulating a plan; and there is a reasonable possibility of confirmation within a reasonable time. *In re White Plains Dev. Corp.*, 140 B.R. 948 (Bankr.S.D.N.Y.1992). The court in *In re Honett*, 116 B.R. 495 (Bankr.E.D.Tex.1990) held that a mortgagee was not entitled to relief from the stay, where the Chapter 13 debtor did not have any equity in the mortgaged residence, absent a showing that the debtor would be unable to successfully propose a plan which would result in payment of the outstanding mortgage arrears. A mortgagee was not entitled to lifting of the stay where it was not clear that the debtor would be unable to effectively reorganize. *In re Century Inv. Fund VIII Ltd. Partnership*, 155 B.R. 1002 (Bankr.E.D.Wis.1989). Furthermore, the loss of the Debtors' home would be detrimental to any prospect of reorganization. *See, In re Deeter*, 53 B.R. 623, 625 (Bankr.N.D.Ind.1985).

■ The Debtors' Chapter 12 Plan is due on May 17, 1995. The case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection. *In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D.Ill.1987) (citations omitted). Case law has further held that an equity cushion of less than 11% is insufficient to constitute adequate protection. *Id.* However, case law is divided on whether a cushion of 12% to 20% constitutes adequate protection. *Id.* At the hearing, no evidence, other than the Trustee's inventory, was presented regarding the value of the equipment. As a result, this Court cannot accurately determine the amount of equity cushion. At the present time, the Court will not require adequate protection payments. The movant may reurge its Motion for Adequate Protection if the Debtors do not propose a feasible plan by May 17, 1995.

There was no evidence presented at trial that the Debtors would clearly not be able to reorganize. This Court is of the opinion that

the Debtors should be given an opportunity to formulate a plan and work through their financial difficulties. The Motion to Modify Stay will therefore be denied without prejudice to refiling if the Debtors are not able to formulate a feasible plan.

IT IS THEREFORE ORDERED that the Amended Motion to Dismiss by Wilburton State Bank is **denied.**

IT IS FURTHER ORDERED that the Motion to Modify Stay or in the Alternative Motion for Adequate Protection is hereby **denied.**